Submitted on briefs February 23, affirmed March 9, 1926.

## GUY W. FAIRBANKS ET AL. *v.* WILLARD JOHNSON ET AL.

(243 Pac. 1114.)

**Vendor and Purchaser—That Vendor had Superior Judgment as to Property Held not of Itself Sufficient Reason to Set Aside Contract for Fraud.**

1. Where purchaser of dairy ranch was from another part of country, fact that vendor, who did not attempt to rush sale or withhold any information from purchaser, had superior judgment as to value of land, character of soil, and manner of operating dairy ranches in that section, *held* not sufficient reason to set aside contract on ground of fraud.

**Vendor and Purchaser.**

2. Fraud cannot be predicated on representation concerning value of dairy ranch sold; it being but expression of opinion.

**Vendor and Purchaser.**

3. Evidence *held* insufficient to establish vendor's fraudulent representations in sale of dairy ranch.

**Vendor and Purchaser—Purchaser Who Examined Dairy Ranch Could not Complain That He was Injured by Vendor's Misrepresentations.**

4. Where means of knowledge were at hand and furnished to purchaser of dairy ranch, no effort being made to prevent him from using them, and he examined property before purchase, he will not be heard to say that he was deceived to his injury by vendor's misrepresentations.

Fraud, 26 **C. J.**, p. 1143, n. 16.
Vendor and Purchaser, 39 **Cyc.**, p. 1269, n. 68, p. 1270, n. 80, p. 1437, n. 38.

From Tillamook: GEORGE R. BAGLEY, Judge.

In Banc.

This is a suit to rescind a contract to buy a 20-acre dairy ranch in Tillamook County. Plaintiffs aver

1. See 27 **R. C. L.** 647.
2. See 27 **R. C. L.** 377.
4. Right of purchaser to rely upon representations made by vendor as to quality or condition of soil, see note in **L. R. A.** 1917C, 273. See, also, 27 **R. C. L.** 359.

they were induced to enter into contract, September 20, 1923, to pay $7,500 for this place by reason of the following alleged false and fraudulent representations:

"(1) That said property was worth the sum of $10,000, and that it was a bargain at the price of $7,500.

"(2) That the only reason defendants would take such a low figure for said property was on account of the health of the defendant Mary E. Johnson, who defendants claimed could not live longer in Tillamook County.

"(3) Defendants further represented that said real property described in said contract would keep and maintain and raise sufficient feed to carry ten dairy cows.

(4) That defendants had maintained six cows upon said property during the year just past, and the proceeds of the milk delivered at the cheese factory had averaged $150 per month.

"(5) Defendants also represented that the place consisting of 29 acres located just south of the property described in the contract hereinbefore described could not be purchased for less than $7,500."

Plaintiffs allege:

"That each and all of said representations were false and were made by said defendants fraudulently and for the purpose of inducing plaintiffs to enter into said contract, and the plaintiffs relied upon said representations and statements, and relying thereon, and not otherwise, were thereby induced to and did enter into said contract; that in truth and in fact said property described in said contract was not reasonably worth more than $3,000; that said property at the time of making said contract would not produce sufficient feed to keep and maintain thereon more than four head of dairy cows; that in truth and in fact the average milk check per month for the year preceding the entering into the contract did not

exceed $75 per month, and that during said year preceding the entering into said contract defendants had pastured the cows maintained upon said property described in said contract upon an adjoining farm a large portion of said year; that the place consisting of 29 acres located just south of said property could have been purchased by plaintiffs for the sum of $5,000.

"That plaintiffs did not learn of the falseness of the aforesaid representations so made by defendants to plaintiffs until a short time prior to the bringing of this suit, and particularly during the month of June, 1924, when the feed upon said premises for the dairy cows maintained by these plaintiffs was entirely gone, and then, and then only, these plaintiffs began to make inquiry concerning the truth of the representations made by defendants to plaintiffs, and then for the first time ascertained that said representations were false as hereinbefore alleged."

Plaintiffs paid $1,500 upon execution of the contract, assumed a mortgage of $1,000 in favor of the State Land Board, and agreed to pay the balance, $5,000, in yearly installments of not less than $500.

Plaintiffs still retain possession, but allege in their complaint an offer to return to defendants all of the property received under the contract, subject to a lien of $1,500, which they ask the court to impress upon the same.

Defendants in their answer, so far as is material, deny the charge of fraud, and allege affirmatively that plaintiffs, prior to the purchase of this property, made a thorough inspection and examination of the same, and relied upon their own judgment in the transaction under consideration.

The trial court, without making findings of fact, decreed that the suit be dismissed and that defendants recover their costs and disbursements. Plaintiffs appeal.                                        AFFIRMED.

For appellants there was a brief over the name of *Messrs. Botts & Winslow.*

For respondents there was a brief over the names of *Mr. T. H. Goyne* and *Mr. C. R. Chapin.*

BELT, J.—At the time of entering into this contract of purchase, plaintiffs were "newcomers" from Nebraska. While driving in their automobile along the state highway in Tillamook County, they observed a "For Sale" sign in front of defendants' property. On the following Sunday evening they returned and inquired if the ranch was for sale. When told that it was on the market, the plaintiffs desired to look it over then, but were persuaded to stay all night and go over the ranch the next day. Mr. Fairbanks spent Monday, Tuesday and Wednesday of that week (September, 1923) inspecting the ranch. He saw the cows milked, the amount of hay in the barn, dug holes to ascertain the character of the soil, was shown the boundaries of the ranch, and otherwise made a full and complete inspection. On Wednesday evening he decided to buy the property, having made an unsuccessful attempt to have the vendors "knock off $500." Thursday, plaintiffs drove their truck to McMinnville for their household goods, and on Friday all parties went to Tillamook City to have a lawyer draw up the contract. After the deal was closed defendants remained on the ranch with plaintiffs for four or five days preparing to leave for West Virginia, where they now reside. Under the contract, aside from the land conveyed, plaintiffs obtained 6 cows, 2 yearlings, 3 calves, 1 bull, a team of horses, and all farming machinery and equipment then on the ranch.

Plaintiffs also were given certain furniture of inconsequential value not mentioned in the contract.

1. In the light of the record, we are convinced that plaintiffs paid too much for this ranch. It was an improvident contract. But were they defrauded? Plaintiff had, as he says, "been a farmer all his life." While he had no experience in dairying in this section of the country, it cannot be said that he was embarking in an enterprise of which he was wholly ignorant. We apprehend that there is no material difference between cows in Oregon and cows in Nebraska so far as eating hay and giving milk is concerned. No doubt, defendants had superior judgment of the value of the land, the character of the soil, and the manner of operating dairy ranches in that particular section; but we cannot set aside a contract merely by reason of such facts. We have carefully studied the record, and fail to see wherein defendants undertook to defraud the plaintiffs in any particular. They did not try to "rush" the deal. Plaintiffs were given every opportunity to satisfy themselves as to the advisability of buying this property. As the plaintiff, Mr. Fairbanks, testified, referring to Mr. Johnson, "I don't recall of anything that I asked him about that he withheld." We think the plaintiffs relied on their own judgment, and by that they must abide.

2. Under the facts disclosed by this record, the representation concerning value was but an expression of opinion, and fraud cannot be predicated thereon. Each case in this respect must be considered in the light of its particular facts and circumstances. That value is largely a matter of judgment, and upon which reasonable minds may differ,

is well demonstrated by the marked variance of the testimony of witnesses in this case.

3. Concerning the alleged representation that the ranch "would keep and maintain and raise sufficient feed to carry 10 dairy cows," defendants admit that Mr. Fairbanks was told it would keep 10 cows "if it was all cleared up like the meadow." In this respect Mr. Fairbanks testified that Johnson told him if the place were cleared, it would keep 10 cows. Unfortunately, 1924 was one of the driest years in the history of Tillamook County, and plaintiffs, like most of the other dairymen, were obliged to buy feed. Without further reviewing the evidence, we think plaintiffs were not defrauded in this particular. If the vendors had falsely represented that the "proceeds from milk delivered at the cheese factory had averaged $150 per month," we would agree with counsel for appellants that such would constitute ground for rescission of this contract, but the proof does not substantiate this allegation. We are inclined to accept Johnson's version of this matter wherein he testified that "what they made with the cows, chickens, garden stuff, and berries ran around $150 per month for about eight months in the year."

4. It appears from the decree that the trial court held against plaintiffs for the reason that they "did not exercise the ordinary care and ordinary prudence required of them by law to be exercised in their own behalf, and that in consequence they cannot say that they have been defrauded." We appreciate the fact that the trend of modern authorities is to restrict rather than extend the rule requiring reasonable diligence by him who claims to have been defrauded: 26 C. J. 1144; 12 R. C. L. 360; *Larsen et al.* v. *Lootens et al.,* 102 Or. 579 (194 Pac. 699, 203

Pac. 621); but we believe such doctrine may be invoked herein. The true rule is announced in *Shappirio* v. *Goldberg,* 192 U. S. 232 (48 L. Ed. 419, 24 Sup. Ct. Rep. 259, see, also, Rose's U. S. Notes), cited with approval in *Linebaugh* v. *Portland Mortgage Co.* (Or.), 239 Pac. 196.

"When the means of knowledge are open and at hand or furnished to the purchaser or his agent and no effort is made to prevent the party from using them, and especially where the purchaser undertakes examination for himself, he will not be heard to say that he has been deceived to his injury by the misrepresentations of the vendor."

Appellant relies strongly upon *Larsen* v. *Lootens, supra,* but the facts of the case are materially different from the one at bar. There, the vendor made certain representations concerning the character and quality of the soil, but the ground was covered with snow and the vendee had no means of ascertaining the facts. Authorities cited where there was "either the existence of a fiduciary relationship, artifice, or deceit practiced to lull the party into a false sense of security, difficulty in ascertaining the truth by reason of the character of the thing inspected, or where the parties were not dealing at arm's-length" are not in point: *Linebaugh* v. *Portland Mortgage Co., supra.*

After careful consideration of the entire record, we think the result reached by the trial court is in keeping with due administration of justice, and the decree dismissing this suit and awarding defendants' costs and disbursements is affirmed.    AFFIRMED.