Argued June 30, affirmed July 13, 1926.

## CHRIS GESME *v.* R. W. POTTER.
## R. W. POTTER *v.* CHRIS GESME.

(247 Pac. 765.)

**Sales.**

1. Evidence *held* to show that dairy herd, represented by seller as in healthy condition contained, with his knowledge, cows afflicted with contagious abortion.

**Sales—Buyer of Diseased Dairy Cows Held to have Exercised Due Diligence After Discovering Fraud to Advise Seller of Desire to Rescind.**

2. Buyer informing seller, traveling in another state, that dairy cows, represented as healthy, were afflicted with contagious abortion, and that he desired to rescind, when expert's report of fact was made known to him, *held* to have exercised due diligence after discovering fraud; especially as such disease cannot be definitely ascertained by laymen.

2. See 6 R. C. L. 935.

**Sales—Seller Owed Duty to Advise Buyer of Known Fact That Dairy Herd was Afflicted With Contagious Abortion.**

3. It was duty of seller, knowing that dairy herd was afflicted with contagious abortion, to so advise buyer when latter questioned him concerning health of cows.

**Sales—Dairy Rancher Making Thorough Inspection Before Purchasing Cattle Could not Rescind for Misrepresentations as to Milk Production.**

4. Experienced dairy rancher making thorough, independent inspection at ranch and having opportunity to learn about milk production before closing deal for purchase of dairy herd *held* not entitled to rescind for misrepresentations as to such production.

Fraud, 26 C. J., p. 1162, n. 10.
Sales, 35 Cyc., p. 631, n. 12.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.

These suits, which were consolidated for hearing in the lower court, involve the questions as to whether the defendant Potter is entitled to rescind a contract to purchase a dairy herd and certain other personal property on the ground of fraud. On August 9, 1922, plaintiff by written contract agreed to sell to defendant 43 cows, 19 heifers, two bulls, seven horses, two milk delivery wagons, one Ford truck, two Ford delivery autos, and other equipment used in operation of the "Jersey Lily Dairy" located near Gresham, Oregon, at the stipulated price of $8,000. Five hundred dollars in cash was paid upon execution of the agreement; a note executed by E. J. Hoover for $1,500 was assigned in part payment; and the balance of the purchase price, $6,000, was to be paid in certain installments as evidenced by note which was secured by chattel mortgage covering property sold. At the same time defendant leased from plaintiff cer-

3. See 12 R. C. L. 309.
4. See 12 R. C. L. 357.

tain real property used in the dairy business in which plaintiff was then engaged.

Defendant defaulted in payments and plaintiff instituted proceedings to foreclose his chattel mortgage.

In answer to the foreclosure suit, defendant alleged that he was induced to enter into the contract of purchase and lease by reason of the following false and fraudulent representations of plaintiff:

"That all of said cows were first class, healthy dairy cows; that he was getting from said cows 90 gallons of milk per day; and that the same were free and clear of all incumbrances."

The trial court found that defendant was defrauded as alleged and canceled the lease, note and mortgage, awarding defendant judgment against plaintiff for $2,385.32. Plaintiff appeals.        AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Barnett H. Goldstein.*

For respondent there was a brief and oral argument by *Mr. L. E. Crouch.*

BELT, J.—1. Defendant's charge of fraud is predicated principally upon the representation that the dairy cows were in a healthy condition. We think it is clearly established that when defendant took possession of this dairy ranch September 1, 1922, the herd was, and for some time prior thereto had been, afflicted with what veterinarians term "contagious abortion." It is a disease, generally contracted through the digestive tract from infected food, which causes premature birth of calf. Cows afflicted with such disease are worthless for breeding purposes and their milk production is greatly reduced. There

is no known cure; it is extremely contagious, and can only be combated by isolation and sanitation.

During the months of September, October and November, 1922, nine calves were born dead. Defendant became alarmed and caused the State Veterinarian to take blood tests from twelve cows of the herd. These samples were sent to the Oregon Agricultural College and Dr. Miller of that institution reported that all of the cows from which blood tests had been made were afflicted with contagious abortion. Other veterinarians were called and the same diagnosis was made.

Did plaintiff know that his dairy herd contained cows afflicted with this disease at the time of making the sale? The great preponderance of the evidence indicates that he did. When defendants took possession there was found in the dairy barn a large bottle labeled "Contagious Abortion Remedy." Witness Pomeroy, who worked for plaintiff from August to December, 1921, testified that Dr. Howes, a veterinarian, was called to treat a cow and that he heard him tell plaintiff it was a case of contagious abortion. Fairchild, although much confused in certain parts of his testimony, was positive that when he worked on the ranch eight calves prematurely born were buried by him. It is significant that Dr. Howes was not called by plaintiff as a witness.

2. When the report of Dr. Miller of the Oregon Agricultural College was made known to defendant, he wrote to plaintiff on January 15, 1922, at San Diego, California, informing him of the situation. Appellant complains that defendant did not exercise due diligence after discovering the alleged fraud, but in this contention we cannot agree. Plaintiff was

traveling in California and defendant had no earlier opportunity to advise him of his desire to rescind. Furthermore, this disease is not capable of definite ascertainment by laymen. Experts testified, without contradiction, that contagious abortion cases cannot ordinarily be detected without blood tests. There is no showing that defendant was negligent in exercising his right to rescind this contract.

3. *Fairbanks* v. *Johnson,* 117 Or. 362 (243 Pac. 1114), and similar cases, have no application for the reason that the alleged representations there involved were of such nature and character that the truth could readily be ascertained through the exercise of reasonable diligence. In the instant case, plaintiff knew his dairy herd was afflicted with contagious abortion and it was his duty to so advise defendant when the latter questioned him concerning the health condition of the cows.

4. We agree with appellant relative to other alleged representations. Defendant made a thorough and independent inspection at the ranch before he closed the deal and had the opportunity to learn about the production of milk. He was born on a dairy ranch and had engaged in this business many years. He was not misled in this respect. *Fairbanks* v. *Johnson, supra,* is instructive on this phase of the case.

There is no merit in respondent's charge of misrepresentation relative to the property being free and clear of encumbrances.

The trial court with commendable care considered the account between these parties and found a balance of $2,385.32 in favor of defendant. After a consideration of the voluminous record, we are of opinion that justice has been administered. The de-

cree of the lower court is affirmed and defendant is awarded costs and disbursements.     AFFIRMED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.