VAN LOOYENGOED *v.* ALLENCREST GARDENS CORP.

1. VENDOR AND PURCHASER—RESCISSION—FRAUD.

   Decree for rescission of land contracts for fraud is affirmed where evidence shows vendee was a widow inexperienced in business matters and living at a place remote from property involved, was not familiar with real estate values and so informed agents that she would rely entirely on their representations as to value, did rely on them and value represented was greatly in excess of actual worth.

2. SAME—RESCISSION—FRAUD—PERSONAL LIABILITY FOR REPAYMENT.

   Decree of personal liability in suit for rescission for repayment of payments made on land contracts against vendor corporation is affirmed but as against its president and sales manager, not a party to said contracts, is reversed, even though he participated in the fraud involved and may have received a commission from vendor for the sale.

Appeal from Newaygo; Pugsley (Earl C.), J. Submitted October 4, 1933. (Docket No. 32, Calendar No. 37,232.) Decided December 5, 1933.

Bill by Clara Van Looyengoed against Allencrest Gardens Corporation, a Michigan corporation, and Max Borgan, doing business as Borgan Realty Company, to rescind two land contracts for fraud and for other relief. Decree for plaintiff as to both defendants. Defendants appeal. Affirmed as to defendant corporation, reversed as to defendant Borgan.

*Harry D. Reber,* for plaintiff.

*Davidow & Davidow,* for defendants.

McDONALD, C. J. This is a suit for rescission of two land contracts on the ground of fraud. The

contracts are dated July 28, 1931, and evidence the purchase by the plaintiff of two lots from the Allencrest Gardens Corporation. The defendant, Max Borgan, was president and sales manager of the corporation. The lots in question were sold by him through subagents, Miss Gentz and Miss Riegel, and are a part of a subdivision near the city of Detroit in Ecorse township, Wayne county, Michigan.

The plaintiff is a widow living in Fremont, Michigan. At the time she purchased the lots she had some money in one of the Fremont banks and owned 11 shares of Consumers Power Company stock. It is her claim that she was induced to buy the lots by false representations of the defendants' agents, who in substance stated to her that her money was not safe in the banks; that the Consumers Power Company stock was falling in value; that she would lose the largest part of her investment in that stock if she retained it; that the safest place for her money was in real estate; that the purchase of the lots in question offered a wonderful opportunity for a safe investment and large profits; that she would double her money in five years if she bought the lots, which were well worth $1,300 each.

The plaintiff charges that she was not at all familiar with the value of real estate in the vicinity of these lots; that she so informed the agents and further told them that if she made the purchase she would be compelled to rely entirely on the truth of their representations; that she did rely on them; that she believed them to be true and did not discover that they were false and made with intent to deceive and to defraud her until after she had executed the contracts. The assertion and denial of these fraudulent charges made up the issue, which

on the hearing the trial court resolved in favor of the plaintiff and accordingly entered a decree against both defendants for rescission and repayment of the consideration. The defendants have appealed.

The defendants admit that they represented the value of the lots to be $1,300, but deny that they made the statements attributed to them about the failing financial condition of the Consumers Power Company and the Fremont banks. They still insist that the lots were reasonably worth the amount represented but say that in any event regardless of the actual value the statements made to the plaintiff were merely expressions of opinion insufficient to sustain an action for rescission.

The general rule that an honest expression of opinion as to value in itself does not constitute actionable fraud is well settled; but we think the facts in this case present an exception to the general rule. If the plaintiff's testimony is true, there was more than expression of opinion. There was a concealment of facts bearing on the value. There was a misstatement of facts to one who was ignorant of land values in the vicinity where these lots were located. At the time the plaintiff purchased the lots there was no local market for them. A selling campaign was carried on in districts remote from the city of Detroit. Mr. Ratigan, an expert witness on values, called by the defendants, testified:

"With regard to the sales of real estate and the value of real estate for selling purposes in June, 1931, the market was comparatively dead."

The sales to the plaintiff were made in July, 1931, at which time according to the defendants' expert witness "the market was comparatively dead." The plaintiff knew nothing about this condition of the real estate market. They did not inform her of the

actual situation though she told them she was ignorant of real estate values and if she purchased the lots it would be in reliance on their representations. They concealed the facts from her. In respect to this phase of the case the trial court said in his opinion:

"It further appears from the testimony that the area contiguous to Detroit had been largely subdivided prior to June, 1931, and that there were many of these unimproved lots on the market which were unsalable at the time the contracts were made in this case and it is the further finding of this court that the lots in the Allencrest Gardens Subdivision were no exception to the general condition which prevailed in Detroit at the time the deal was made. * * * It further appears that there was no local market for this real estate and that sale of lots was being made through the efforts of the sales organization of the defendant outside the city of Detroit. This court is not favorably impressed with the practice employed in this case of deceiving widows and other parties without knowledge of values of real estate in the city of Detroit and by the use of high-pressure salesmanship inducing them to make purchases of this kind. The plaintiff in this case was entirely unacquainted with the values of Detroit real estate. She appears to be an honest but an ignorant woman in business matters; one whose testimony is worthy of credence by the court, but whose appearance on the stand indicates her unfamiliarity with or knowledge of business affairs. There is no question in the mind of the court but that she was induced to purchase these lots relying entirely upon the representations as to value that were made to her and that excepting for such representations she would not have entered into the contract to buy them. Such is her testimony, and all of the facts and surroundings corroborate her testimony in that respect."

There was a wide variance in the testimony as to the value of the lots at the time they were purchased. It ranged from $50 to $900. Mr. Cain, a witness for the plaintiff, testified that the lots were worth $100 each. Objections to his qualifications were overruled and on that ruling error is assigned. We think him sufficiently qualified. There is more merit to the alleged disqualification of the witness Branstrom, who valued the lots at $50 each. However, his testimony may be eliminated without affecting the result. Mr. Ratigan, the defendants' real estate expert, gave his opinion that the lots were reasonably worth $900 each. Of his testimony the trial court said:

"The qualifications of the expert who testified for the defendants are very apparent. The credence to be given to his testimony, however, is somewhat lessened because of the unusual interest which he manifested upon the stand and the voluntary statements made, which would characterize him as a great booster for all Detroit real estate and especially that in the down-river district."

On this record we are convinced as was the trial court that the value represented by the defendants was greatly in excess of the actual worth of the lots; that the representations were made as the plaintiff claims; that they were relied on by her; that they were false and that she is entitled to a rescission of her contracts.

But we disagree with the court in his finding and decree of personal liability on the part of defendant Borgan for the repayment to the plaintiff of the money paid on the contracts. This is not a suit at law for damages resulting from the fraud. It is a suit in equity for rescission. She is entitled to a rescission and restitution from the corporation of the money paid on the contracts. She can recover

nothing from Borgan. He was not a party to the contracts. He personally received no payments. Though he participated in the fraud and may have received a commission from the corporation for the sale he cannot in this action be held personally liable. *Hafner* v. *A. J. Stuart Land Co.,* 246 Mich. 465.

As to defendant Borgan, the decree is reversed. In all other respects it is affirmed. The defendant Borgan will have costs against the plaintiff. She will have costs against the corporation.

WEADOCK, POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.