Argued March 28; reversed April 25; rehearing denied May 16, 1944

\*MURRAY *v.* LAMB ET AL.

(148 P. (2d) 797)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK and BRAND, Associate Justices.

*J. LeRoy Smith,* of Portland (J. LeRoy Smith and Jean Lagerquist, both of Portland, on the brief), for appellant.

*John R. Murphy* and *Howard P. Arnest,* both of Portland (John R. Murphy and Elton Watkins, both of Portland, on the brief), for respondents.

BELT, J. This is an action to recover damages resulting from alleged fraudulent representations. Since the filing of the original complaint there have been seven amended complaints, the last one being magnanimously designated by the circuit court as the Sixth Amended Complaint. Defendants have interposed a total of 42 demurrers and motions to the complaints filed—the plaintiff being content with only fifteen motions. Six circuit judges have considered one or more phases of the case. More than three years have elapsed and yet issue has not been joined on the merits. Like Banquo's ghost, it will not down.

A general demurrer was sustained to the "Sixth" amended complaint and upon refusal of the plaintiff to plead further, the action was dismissed. From the order of dismissal, the plaintiff appeals.

The plaintiff alleges:

"I.

"That the plaintiff is now, and during all the times herein mentioned has been, a widow, inexperienced in business or financial affairs, unacquainted with the forms and unused to the customs and usages thereof, and ailing in health; that while and during the times the representations and promises hereinafter complained of were made to plaintiff by the defendants, the plaintiff was acquiring, and did acquire, as sole beneficiary, the estate of Patrick Murray, Deceased, which estate was of the appraised value of $48,490.26, and is identified as case No. 35-797 in the Probate Files in the office of the County Clerk of Multnomah County, and State of Oregon; that said estate, together with the proceeds thereof, was of the reasonable value of not less than $50,000.00; and that she had no other property or estate.

"II.

"That at all times herein mentioned, the defendant, the Sanctuary of Our Sorrowful Mother was, and now is, a corporation organized under and by virtue of the laws of the State of Oregon.

"III.

"That from time to time, between the first day of June, 1934, and the 24th day of December, 1937, the defendants, and each of them, made the following representations to plaintiff, and promised her:

"(a) That the defendant corporation was erecting and furnishing, or about to erect and furnish, an imposing basilica or sanctuary in or adjacent to the City of Portland, on its property, or premises, known as the Grotto, according to plans and drawings defendants, and each of them, had and exhibited to plaintiff; and that the purpose thereof was to erect the first unit of a permanent and expanding institution.

"(b) That the defendant, David E. Lamb, was a man of great wealth and of high social and financial standing, a member of the British Royal Family, and his wife, a Duchess, or about to be coronated one; that he was solvent and had a good credit; that he held numerous grants in Canada from the British Government, and possessed valuable concessions, rights and interests in Canada and in London, England; that he had acquired, possessed and controlled oil leases and other concessions or contracts from the Government of Nicaragua, worth many millions of dollars, and was the owner of the town-site of Sidney, Australia, or valuable interests therein, acquired by him through the estate of one Emily Clark.

"(c) That the defendant, David E. Lamb, was able and willing, and could or would, make a gift or grant of $250,000.00 to said defendant,

the Sanctuary of Our Sorrowful Mother, for the commencement and erection of said first unit of the Basilica or sanctuary aforesaid, but he was temporarily unable to do so; and that if plaintiff would advance, temporarily, funds and proceeds of the said Patrick Murray Estate to prepare for and commence the erection of said first unit, and meet the initial costs of arranging the matter of said gift or grant, such as attorney's fees, telephone, telegraph and traveling expenses of defendants, and their temporary requirements, all such funds and proceeds would be repaid in full.

"(d) That such advances on the part of plaintiff were urgent and essential to the securing of said gift or grant, and the erection of said basilica or sanctuary; and that the funds and proceeds of said Patrick Murray estate were sufficient to meet the costs, expenses and requirements aforesaid.

"(e) That defendants, and each of them, held and exhibited to plaintiff a certain purported Cosmopolitan Trust certificate, with bearer note in the amount of $50,000.00, which certificate and note the defendants, and each of them, represented to plaintiff had been delivered to the defendant corporation by the defendant David E. Lamb, and that the same would be retained by it, together with other and similar certificates and securities supplied by said defendant Lamb, in the further sum of $250,000.00; and that the retention by said corporation of said certificates, notes and securities was adequate security for the advances or loans made, and to be made, by the plaintiff.

"(f) That all moneys, advances or loans made, or to be made, by the plaintiff, for such purposes and requirements, would be repaid in full by the defendants.

## "IV.

"That each and all of the representations and promises herein set out were made and reaffirmed by the defendants, and each of them; that at the time said representations and promises were made the defendants were informed and had knowledge of plaintiff's circumstances and conditions, the value and character of said Patrick Murray Estate, and of the fact that plaintiff was devoted to the Catholic faith.

## "V.

"That the plaintiff believed and relied upon the representations and promises aforesaid, and on the acts and conduct of the defendants and each of them, and believing and relying thereon, made advances, and loans to, and at the special instance and request of, the defendants, and each of them, in the amount of the full value of the said Patrick Murray Estate. That a more detailed and itemized statement of the advances and loans made by plaintiff is attached hereto, marked Exhibit 'A', and by this reference made a part thereof."

Note: Exhibit A is a statement purporting to show, as per allegations of complaint, large sums of money advanced by plaintiff to defendants and particularly to defendants Lamb and Pettibone and to Mayer as "President of the Sanctuary". (It is observed that Mayer is not a party defendant and no valid service of summons was had on Pettibone.)

## "VI.

"That each and all of the representations and promises above set forth were false and untrue, and were known by the defendants, and each of them, to be false and untrue when made. That said representations and promises were made by the defendants, and each of them, in pursuance of a fraudulent scheme, with the intent to induce the plaintiff to

rely thereon. That said promises were made by the defendants, and each of them, without any intention on their part to abide thereby; and that the defendants, and each of them, did not intend to repay the plaintiff.

"(a) That the defendant corporation was not erecting or about to erect any such unit or imposing basilica or sanctuary; and never did erect, furnish or commence such unit, basilica or sanctuary, nor did said defendant, nor any of them, intend to do so.

"(b) That the defendant David E. Lamb was not a man of great, or any, wealth, nor of high social or financial standing; that he was not a member of any royal family; that his wife was not a duchess; and that the purported coronation of her as such was a deliberate hoax; that the said defendant did not hold grants or concessions of any value; that there was no Emily Clarke estate; and that the defendant Lamb was insolvent, and the defendants knew, or should have known, that he was insolvent.

"(c) That the defendant David E. Lamb could not, knew that he could not, nor did he intend to, make a gift or grant of $250,000.00 to said defendant The Sanctuary of Our Sorrowful Mother; and defendants, and each of them, knew, or should have known, that he could not, and would not do so.

"(d) That the funds and proceeds of said estate were insufficient to meet the costs and expenses and requirements aforesaid; that the same were frittered away by the defendants in fruitless speculations unrelated to the preparation for or commencement of said edifice or unit aforesaid.

"(e) That the said certificates, notes and securities so exhibited to plaintiff were of no

value, or purposely rendered of no value by defendants; and were exhibited solely for the purpose of influencing plaintiff to make such advances or loans.

"(f) That none of the defendants have ever repaid any of the advances or loans so made by plaintiff; nor did the defendants, or any of them, ever intend to repay her therefor.

## "VII.

"That each and all of the promises so made by the defendants to plaintiff, as aforesaid, were made without any intent to abide thereby, or to accomplish the object for which such advances and loans were made.

## "VIII.

"That while and during the times the representations and promises herein complained of were made to plaintiff, one A. M. Mayer was founder, promoter and priest of the Grotto, and was one of the incorporators, and president of the defendant corporation, The Sanctuary of Our Sorrowful Mother.

## "IX.

"That plaintiff did not become aware of the fraudulent acts and schemes aforesaid until in December, 1937; and that plaintiff did not become aware of the participation therein by the defendants, The Sanctuary of Our Sorrowful Mother, Depencier, Brosnahan, and Croke, or either of them, until after the filing of the original complaint herein.

## "X.

"That in addition to the advances and loans aforesaid, and by reason of all and several the representations and promises aforesaid, plaintiff became personally liable on account of notes she was induced by the defendant to make and deliver for money so advanced to the defendants, as aforesaid, which notes she has or must repay from other sources, in the amount of $15,400.00.

## "XI.

"That by reason of all and several, the false representations, promises and acts and conduct aforesaid, the plaintiff has been damaged in the sum of $65,400.00; and that $25,000.00 is a reasonable sum to be allowed plaintiff as exemplary damages herein."

To this pleading demurrers were interposed on the grounds:

(1) That the complaint does not state facts sufficient to constitute a cause of action;

(2) That several causes of action have been improperly united;

(3) That the action has not been commenced within the time limited by the statutes of the state of Oregon.

■ The circuit court did not state the ground upon which the demurrers were sustained. We shall assume, therefore, that the court was of the opinion that the complaint failed to state facts sufficient to constitute a cause of action. It does not follow, however, that defendants are precluded here from urging the other grounds stated in the demurrers. After all, the ultimate question is whether the court erred in dismissing the action.

■ The fourth amended complaint, which is not materially different from the one now under consideration, was before this court in *Murray v. Lamb*, 168 Or. 596, 115 P. (2d) 336, 124 P. (2d) 531, on appeal from an order of dismissal. The defendant Lamb had demurred to the complaint on the grounds: (1) Defect of parties defendant in that A. M. Mayer had not been joined as a defendant in the action; (2) that the action had not been commenced within the time limited by law. It was held that Mayer was not a necessary

party, as the action sounded in tort, and recovery could be had against one or more of the joint tort-feasors. The court said it was an action to recover damages on account of certain alleged false and fraudulent representations. Such is the law of the case.

It follows that the complaint herein is not vulnerable to demurrer on account of an action ex contractu and one ex delicto being improperly united. Nor do we think that such pleading—accepting as we must on demurrer that the material allegations of the complaint are true—fails to allege a cause of action based upon fraud. We agree that the complaint in question falls far short of being a simple and concise statement of the facts constituting the alleged cause of action. In many particulars it is vague, indefinite and uncertain. It is not the purpose of the demurrer, however, to serve as a motion to make the pleading more definite and certain. As said in *Clarkson v. Wong,* 150 Or. 406, 42 P. (2d) 763, 45 P. (2d) 914:

"* * * A good cause of action may be defectively stated and be subject to a motion to make more definite and certain without being subject to demurrer. * * *"

In *Jackson v. Jackson,* 17 Or. 110, 19 P. 847, quoted with approval in the Clarkson case, it is stated:

"* * * A pleading must contain facts sufficient to constitute a cause of action, suit or defense; but a failure to state them with that clearness and perspicuity required in good pleading is not a ground of demurrer. It is not open to that character of objection, unless it fail to contain some material averment. If the facts necessary to constitute a cause of action, suit, or defense can be obtained by a liberal construction of the allegations of the pleadings, with a view to substantial justice between the parties, a demurrer to it should not be sustained.

When the pleader alleges sufficient facts in such a case, but states them in such a vague and ambiguous manner that the precise nature of the charge or defense is not apparent, the remedy of the adverse party is by motion to compel him to make it more definite and certain.''

■ The gravamen of the complaint is that plaintiff, by reason of certain false representations, was induced to loan money to the defendants, ''for the purpose of erecting a basilica or sanctuary''. It is well settled that fraud can be predicated upon false representations relative to the financial condition of third persons. Of course, such representations must amount to more than a mere expression of opinion: 37 C. J. S. 300; Fraud, § 48; *Warren Savings Bank & Trust Co. v. Foley*, 294 Pa. 176, 144 A. 84; *DeSwarte v. First National Bank*, 188 Wis. 455, 206 N. W. 887. Relative to this phase of the case, the pertinent inquiry is: Was plaintiff induced to loan money to the defendants, or either of them, by reason of false representations made to her concerning the financial condition of Lamb, and was she damaged thereby? Fraud could also be based upon the false representation that the defendant corporation was ''erecting or about to erect'' a basilica in or adjacent to the city of Portland. Relative to this specification of fraud, plaintiff charges that the defendants, and each of them, knew that the defendant corporation was not erecting such basilica nor did it intend to do so. We conclude that, although the action is defectively stated, it has all the elements of fraud. Whether plaintiff can establish such allegations as a matter of fact is a question with which we are not now concerned.

■ Was this action barred by the statute of limitations? It was commenced on April 8, 1939, Lamb and his wife, Elton Watkins, Wallie T. Baker, W. A. Miller,

and W. F. Pettibone being named as party defendants in the original complaint. No service was had on defendants Marian Lamb, W. A. Miller, or W. F. Pettibone. It is alleged that "from time to time, between the first day of June, 1934, and the 24th day of December, 1937, the defendants, and each of them," made certain false representations. It is further alleged in paragraph IX of the complaint that plaintiff did not become aware of the fraudulent acts and schemes aforesaid until in December, 1937. Section 1-206, O. C. L. A., provides that an action based upon fraud must be commenced within two years after discovery of the fraud. If plaintiff did not become "aware of" or discover the existence of the fraud until in December, 1937, it is clear that the action is not barred as to the defendants named in the original complaint. As to the defendants Sanctuary of Our Sorrowful Mother and Jerome De-Pencier, individually and as provincial of the Order of Servite Fathers, the court, on October 27, 1939, on motion of the plaintiff, made them party defendants. These defendants were served with summons and they filed separate answers to the amended complaint in November, 1939. It is thus apparent from the record that the action was commenced against them within two years after the discovery of the alleged fraud. The defendants Croke and Brosnahan joined in the demurrer with the other defendants to the "sixth" amended complaint on the ground, among others, that the action was barred by the statute of limitations.

The circuit court erred in sustaining the demurrers and dismissing the action. The judgment is reversed and the cause remanded with directions to permit defendants to answer within 10 days from date of mandate hereof.

Petition for rehearing denied May 16, 1944

ON PETITION FOR REHEARING
(148 P. (2d) 801)

## BELT, J.

■ On petition for rehearing it is urged, among other things, that the court erred in failing to sustain the demurrer to the complaint as against the defendant The Sanctuary of Our Sorrowful Mother, for the reason that an eleemosynary institution cannot be held responsible for the alleged fraud. A simple answer to this contention is that it does not appear from the complaint that said defendant is an eleemosynary institution. That is a matter of defense and cannot be considered on demurrer to the complaint.

The other grounds specified in the petition for rehearing merit no attention.

The petition for rehearing is denied.