Argued December 3, 1958, reversed with directions September 23, 1959

BRIDGMON ET AL *v.* WALKER ET AL

344 P. 2d 233

*Dale Jacobs*, Oregon City, argued the cause for appellants. With him on the brief were S. J. Graham and Bertrand J. Close, Portland.

*Seymour L. Coblens*, Portland, argued the cause for respondents. On the brief were Reinhardt & Coblens.

Before PERRY*, Chief Justice and ROSSMAN, MC-ALLISTER** and O'CONNELL, Justices.

PERRY, J.

Raymond D. Bridgmon and Betty R. Bridgmon, husband and wife, as plaintiffs, brought this suit in the Circuit Court for Multnomah County against George B. Ruschka, J. J. Walker and John P. Celoria, as defendants. The body of their complaint alleges:

"V

"That the making and execution of the aforesaid written agreements and the performance thereof by the plaintiffs according to the said terms as above set forth were procured by the fraud and deceit of the defendants exercised by them and each of them upon the plaintiffs for that purpose through the wilfully false and fraudulent representations and statements made to the plaintiffs by the defendants as follows:

"1. That the house was made of all new materials.

"2. That the house had a cement foundation and was properly supported.

"3. That the land upon which the property stood was properly drained; that the water supply was pure, wholesome, and adequate; and that the sewage was properly disposed of.

"4. That the building in all respects conformed to the state building and sanitation codes.

---

* Chief Justice when case argued.
** Chief Justice when this decision was rendered.

"5. That the building in all respects conformed with the Federal Housing Administration requirements and standards."

They sought $6,000 as compensatory and $6,000 as punitive damages. The jury returned a verdict for compensatory damages in the amount of $4,500. From the judgment entered the defendants appealed.

The facts disclose that plaintiffs Raymond D. Bridgmon and Betty R. Bridgmon entered into a contract to purchase real property owned by defendant George B. Ruschka. The defendants John P. Celoria and J. J. Walker are real estate agents, and as agents of Ruschka effected the sale of this property to Bridgmons. The total consideration for the purchase of the Ruschka property was $8,450. The plaintiffs transferred to Ruschka their $1,150 equity in a house they were purchasing as a down payment and agreed to make monthly payments upon the balance due. In October, 1951, the plaintiffs Bridgmon moved into the property where they resided for several years before moving from the property. Mr. Bridgmon stated their reason for moving from the property as follows:

"Q  Why did you move out?
"A  Why, the cost of the repairing of the foundation and stuff—it was more than I could afford so I let it go."

While this statement of plaintiff's indicates a complete abandonment of the contract, we will consider the matter as a statement of attempted rescission.

After the plaintiffs Bridgmon had given up possession of the property, Ruschka resold the property, but there is no evidence that this action was taken in furtherance of a mutual rescission.

After the appeal had been filed, the defendant

Ruschka and the plaintiffs Bridgmon entered into an agreement whereby for the sum of $900, which was to apply against the judgment, Ruschka was released from all liability and the rights of the plaintiffs in the judgment as against the defendants Walker and Celoria were retained. On a motion of the plaintiffs this court dismissed the appeal as to George B. Ruschka. Also, a motion was granted in this court substituting for Raymond D. Bridgmon as plaintiff Samuel A. McAllister, Trustee in Bankruptcy of Raymond D. Bridgmon.

The defendants Walker and Celoria contend the trial court erred in failing to sustain their motion for an involuntary nonsuit, a directed verdict, and in instructing the jury that the measure of damages was the difference between the amount the plaintiffs agreed to pay for the property and the reasonable market value of the property at the time of sale.

■ Assuming, as the jury must have, that the defendants by fraud induced the plaintiffs into entering into the contract, it is well-established in this jurisdiction that a vendee who has been deceived into entering into a contract of purchase may upon discovery of the fraud either affirm or rescind the contract. These rights are not concurrent, but are inconsistent. *Amort v. Tupper,* 204 Or 279, 282 P2d 660; *Taylor v. Grant,* 204 Or 10, 279 P2d 479; *Widmer v. Leffelman,* 187 Or 476, 212 P2d 737, 196 Or 401, 249 P2d 476; *Baker v. Casey,* 166 Or 433, 112 P2d 1031; *Belanger v. Howard,* 166 Or 408, 112 P2d 1022; *Crouch v. Butler,* 119 Or 344, 248 P 849; *Fairbanks v. Johnson,* 117 Or 362, 243 P 1114; *T. B. Potter Realty Co. v. Breitling,* 79 Or 293, 155 P 179; *Scott v. Walton,* 32 Or 460, 52 P 180.

■ If defrauded party elects to affirm the contract,

he may sue for the benefits to which he is entitled thereunder or for damages for the deceit. *Selman v. Shirley*, 161 Or 582, 85 P2d 384, 91 P2d 312, 124 ALR 1; *Burgdorfer v. Thielemann*, 153 Or 354, 55 P2d 1122, 104 ALR 1407; *McFarland v. Carlsbad Sanitorium Co.*, 68 Or 530, 137 P 209.

If, on the other hand, the defrauded party elects to disaffirm the contract, his remedy lies in restoration to his former position. Such defrauded party need not in all circumstances find relief only in a court of equity, but he may seek this restoration as damages in an action at law. *Nisson v. Tillman et ux.*, 213 Or 133, 323 P2d 329; *Kruse v. Bush,* 85 Or 394, 167 P 308.

Therefore, it is the fraud in the securing of the contract that gives plaintiffs any right of recovery, for "* * * In the absence of fraud or some other ground for rescission, the vendee cannot escape the obligations he has assumed in the contract of purchase, nor can he recover back the purchase money which he had paid." *Kruse v. Bush*, supra, 85 Or 394, 397.

The election of a vendee to rescind the contract is, therefore, a waiver of his right to sue a vendor for damages based on the fraud arising out of the contract.

Since the evidence conclusively discloses that the plaintiffs elected not to affirm the contract, the plaintiffs are not entitled to the benefits they would have received thereunder nor are they entitled to damages for deceit. They are only entitled to such sum as will restore them to their condition as it existed before the contract was entered into.

The pleadings in this case will not support an action for rescission, and the trial court erred in failing to grant the defendants' motion for a non-suit and directed veridct.

136

The cause is reversed with directions to enter judgment for defendants.

O'CONNELL, J., dissenting.

This is an action brought against J. J. Walker, John P. Celoria and George B. Ruschka to recover damages resulting from alleged fraudulent representations made by the defendants in connection with the sale of a house to the plaintiff, Betty R. Bridgmon, and Raymond D. Bridgmon. From a verdict and judgment for the plaintiffs, the defendants Walker and Celoria appeal. In consideration of the payment of $900 by the defendant Ruschka, the plaintiffs covenanted not to proceed further against him and he is, therefore, not a party on this appeal. Although Raymond D. Bridgmon's interest in this proceeding is represented by the plaintiff trustee in bankruptcy, I shall for convenience refer to him as one of the plaintiffs.

The sale was negotiated by the defendant, John P. Celoria, who was employed as a salesman by the defendant J. J. Walker, a real estate broker. The purchase price was $8,450. As a part of the down payment the plaintiffs assigned their equity ($1,150) in another house which they were then purchasing. The earnest money agreement was executed on October 8, 1951 and the final land sale contract was executed on October 18, 1951.

The property consisted of a house and two acres of land which was a part of a subdivision being developed by George B. Ruschka. The house was built on a clay tile foundation faced with concrete. Water was supplied from a well located on the property. Sewage was disposed of by way of a septic tank.

The plaintiffs' complaint charged the defendants with five separate fraudulent representations. Two of

these were withdrawn from the jury and do not present questions on appeal. The remaining specifications of deceit are that the defendants falsely represented (1) that the house had a cement foundation and was properly supported; (2) that the land was properly drained, that the water supply was pure, wholesome and adequate and that the sewage was properly disposed of; and (3) that the buildings in all respects conformed with the Federal Housing Administration requirements and standards.

The complaint alleges that these alleged misrepresentations were made by the three defendants. The record discloses however, that the defendant Walker made no representations personally and, therefore, his liability, if any, must be based upon the representations of his agent Celoria.

The first error assigned is the trial court's failure to grant the defendants' motion for a nonsuit and for a directed verdict. There was sufficient evidence to require the submission of the case to the jury. I shall consider only the evidence relating to one of the specifications of fraud.

Raymond Bridgmon testified that "we talked about the foundation and he [Celoria] said it was a good concrete foundation." This representation, considered in the setting in which it was made, can be regarded as constituting a representation that the house was properly supported. Celoria denied that he made any statements describing the type of foundation which supported the house. The representation, if made, was false. The foundation consisted of tile faced with concrete. There was testimony from which the jury could conclude that the floor of the house sagged as a consequence of the character of the foundation. The statement that the house was supported by a concrete

foundation can be regarded as material in inducing the Bridgmons to purchase the house. The jury could have found the necessary scienter in that Celoria stated as a fact that the house was supported by a concrete foundation and that at the time the statement was made it was "attended by conscious ignorance of, or reckless indifference to, its truth or falsity * * *." *Horner v. Wagy*, 173 Or 441, 459, 146 P2d 92 (1944).

There was also sufficient evidence from which the jury could conclude that the Bridgmons relied upon the defendants' representation and that there was justification for doing so. Prosser on Torts, 2d ed, § 89, p. 552-553. The jury could have found, as it must find, that there was clear and convincing evidence to support a verdict for the plaintiffs. *Cays v. McDaniel*, 204 Or 449, 283 P2d 658 (1955); *Miller v. Protrka*, 193 Or 585, 238 P2d 753 (1952).

The defendants requested the court to instruct the jury to disregard each of the allegations of fraud enumerated above on the ground that there was no evidence to sustain them. The court's refusal to do so is assigned as error. It has already been noted that there was sufficient evidence to require the submission to the jury of the first specification of fraud relating to the adequacy of the foundation.

It would not be profitable to review the other two specifications of fraud because if the case is remanded for a new trial, as I think it should be, they will affect only the defendants Walker and Celoria, and the evidence then presented may be different than that which is now before us.

It is contended that the plaintiffs waived the fraud by entering into an agreement with Ruschka pursuant to which they obtained substantial concessions respect-

ing the subject matter of the alleged fraud. The defendants rely on *Conzelmann v. Northwest Poultry & Dairy Products Co.*, 190 Or 332, 225 P2d 757 (1950) ; *Anderson v. Laws*, 176 Or 468, 159 P2d 201 (1945) ; *Weiss and Hamilton v. Gumbert*, 191 Or 119, 227 P2d 812, 228 P2d 800 (1951). Assuming that the concessions obtained from Ruschka were sufficient to constitute a waiver of plaintiffs' claim against him, this would not necessarily indicate an intent on the part of the plaintiffs to waive their rights against the defendants Walker and Celoria.

To establish that the well water on the premises was not pure as represented, the plaintiffs called Dr. Levin of the State Board of Health, who was asked to testify as to the results of an examination of the water which he made three years after the date of the contract. An objection was made to this testimony but the trial judge admitted it with the understanding that it would be connected later so as to obviate the objection. The plaintiffs argue that the necessary connection was established by the subsequent proof that all of the conditions existing at the time of Dr. Levin's test were shown to exist at the time of the contract. However, as pointed out by the defendants, plaintiff Betty Bridgmon herself admitted on cross-examination that the pollution of the well could have been caused by the excreta from a neighboring house which was constructed after the date of the plaintiffs' contract. For this reason defendants contend that the plaintiffs were unable to establish the relevancy of the doctor's testimony and the court should have stricken the testimony. The testimony was not sufficiently connected. However, the defendants made no motion to strike it and not having done so the objection on appeal is not timely. As was said in a similar situation in *Kimball v. Horti-*

*cultural Fire Relief*, 79 Or 133, 154 P 578, 48 ALR 489 (1916):

> "* * * The defendant's counsel should have interposed a motion to strike out the testimony so objected to, but not having done so, no error, under the circumstances, can be imputed to the court." 79 Or 133, 136, 154 P 578, 579.

The defendants demurred to the complaint on the ground that the action had not been commenced within the two year limitation provided by ORS 12.110. The complaint contained an allegation that the plaintiffs did not discover that the representations were false until October, 1953. The action was brought within two years after that date. The defendants contend that the complaint must not only allege that the discovery of fraud was at a time within the statutory period but that the plaintiffs must also set forth the reasons for not discovering the fraud and thereby negative lack of diligence. The case of *Huycke v. Latourette*, 67 Or Adv Sh 527, recently decided, supports the defendants' contention. In that case the court relied upon several Oregon cases in which it was held that a complaint in equity alleging only that the fraud was unknown until a certain date was subject to demurrer. *City of Pendleton v. Holman*, 177 Or 532, 164 P2d 434, 162 ALR 249; *State of Oregon v. Warner Valley Stock Co.*, 56 Or 283, 106 P 780, 108 P 861; *Wills v. Nehalem Coal Co.*, 52 Or 70, 96 P 528; Ann. 172 ALR 265. It was pointed out in the Huycke case that previously the question had not been directly passed upon in relation to actions at law.

The plaintiffs rely on *Murray v. Lamb*, 174 Or 239, 148 P2d 797 (1944), in support of the proposition that a complaint in an action at law for fraud is good on demurrer even though the complaint does not set forth

the explanation for the plaintiffs' failure to discover the fraud until the date designated in the complaint. In holding that the lower court erred in sustaining the demurrer the court said, "If plaintiff did not become 'aware of' or discover the existence of the fraud until in December, 1937, it is clear that the action is not barred as to the defendants named in the original complaint." 174 Or at p. 250. But the question presented in the instant case was not before the court in *Murray v. Lamb*, supra, because in that case the complaint revealed upon its face that the alleged fraudulent representations were made within the time permitted for the bringing of an action at law for deceit. There is no reason for disturbing our recent holding in *Huycke v. Latourette*, supra.

It follows that the lower court in this case erred in overruling the demurrer. The question remains as to whether the error is ground for reversal. After the demurrer was overruled the defendants set forth in their answer an allegation "That more than two years have elapsed since plaintiffs discovered, or ought to have discovered, they were defrauded * * *." This was denied in the reply. In the trial of the case both parties put in evidence relating to the plaintiffs' diligence in discovering the fraud. It is clear from this evidence that if the demurrer had been sustained the plaintiffs could have drawn an amended complaint with allegations of diligence which would have been sufficient to stand against a second demurrer. Under these circumstances it does not appear that the defendants were prejudiced by the error. If they were not, the trial court's action in overruling the demurrer is not reversible error.

But it is not necessary to pass on that point here because there are other grounds for reversing the

judgment and remanding the case to the lower court for further proceedings.

The defendants requested an instruction that a fiduciary relation did not exist between the defendants Walker and Celoria and the plaintiffs and that these defendants dealt at arm's length with the plaintiffs. It is quite clear that no fiduciary relation existed between Walker and Celoria and the plaintiffs. The plaintiffs knew that Walker and Celoria were acting as Ruschka's agents in selling the house. There was, therefore, not the duty to act for the plaintiffs which would characterize a fiduciary relation. 1 Restatement, Trust 7, § 2b. On the other hand, there was evidence sufficent to convince the jury that the defendant Celoria and Raymond Bridgmon were not dealing at arm's length as stated in the requested instruction. Under these circumstances the defendants were not entitled to the requested instruction as submitted.

The defendants contend that the trial court erred in giving the following instruction:

> "In this sort of a case the measure of damages is the difference between what the plaintiffs agreed to pay for the property or the sum of $8,450, and the reasonable market value of the property at the time of sale; and if you find that plaintiffs are entitled to damages you will award damages in this amount or the difference; but in no event may your damages exceed the amount demanded in the plaintiffs' complaint."

The measure of damages described in the instruction would be correct only if the plaintiffs had paid, or were still liable to pay, the entire contract price of $8,450. If the plaintiffs did not propose to carry out the agreement to purchase the property by paying the balance of the purchase money still due on the contract,

the difference between what the plaintiffs agreed to pay for the property and the reasonable market value of the property would have no necessary relation to the damages which the plaintiffs suffered. Their damage would be the amount which they had paid to defendant Ruschka and reasonable expenditures which were made on the property prior to the discovery of the fraud, together with interest, deducting from these amounts the reasonable rental value of the property.

The complaint simply alleges the elements of fraud and prays for $6,000 compensatory damages and $6,000 punitive damages. There is nothing in the complaint to indicate whether the plaintiffs were proceeding on the assumption that they were affirming the contract or disaffirming it. But the record contains evidence that the plaintiffs had, as the briefs refer to it, "voluntarily forfeited" the contract. It appears that at the time the action was brought the plaintiffs had vacated the premises and had discontinued making the monthly payments called for by the contract and that the premises had been resold, probably by Ruschka, although this is not clear from the record. The testimony of Raymond Bridgmon relating to this matter was as follows:

"Q. Are you living in that house now?
"A. No sir.

"Q. Why did you move out?
"A. Why, the cost of the repairing of the foundation and stuff—it was more than I could afford so I let it go.

"Q. Did you recover anything at all from that house when you moved out in terms of money?
"A. No.

"Q. And any money that you put into the house,

including your down payment, has that been recovered by you?

"A. No sir.

"Q. And how much was your down payment?

"A. Eleven hundred and fifty dollars.

"Q. And how many payments did you make on the house?

"A. Forty-one.

"Q. Of how many dollars each?

"A. Sixty-five.

"Q. Did you attempt to repair * * *?"

At this point in the direct examination an objection was interposed by defendants' counsel and thereupon a recess was taken and the trial judge and both counsel discussed in chambers the question of damages. From the testimony and from the briefs it is evident that there was confusion as to the theory upon which plaintiffs were proceeding. As indicated above in both the plaintiffs' and defendants' brief, reference is made to the "voluntary forfeiture" by the purchasers. This would seem to mean that the plaintiffs had elected to give up their interest in the property and to bring action to recover their loss resulting from the fraud. If this is so, the verdict and judgment of $4,450 based upon the difference between the contract price of $8,450 and the market value (apparently found by the jury to be $4,000) would have no more relevance to the plaintiffs' loss than any figure picked at random.

If plaintiffs' action was to recover their loss upon disaffirmance of the contract it would then be important to establish by competent evidence the amounts the plaintiffs paid on the contract and the reasonable cost of the improvements, the time when they were made with reference to the discovery of the fraud and

the reasonable rental value of the property during the period the premises were occupied by the plaintiffs. See generally, McCormick on Damages, § 122; *Kee v. Dillingham*, 229 N C 262, 49 SE2d 510 (1948) ; *McGowan v. Willamette Valley Irrigated Land Co.*, 79 Or 454, 155 P 705 (1916) ; offset of fair rental value, *Kent v. Clark*, 20 Cal2d 779, 122 P2d 521, 128 P2d 868, 142 ALR 576 (1942) ; *Beaudry v. Favreau*, 99 N H 444, 114 A2d 666 (1957) ; *Jackson v. Howard*, 174 Misc 382, 22 NYS2d 442 (1940) reversed on other grounds, 260 App Div 1056, 24 NYS2d 488 (1940) ; cf. *Swick v. Mueller*, 193 Or 668, 238 P2d 717 (1952) ; reasonable value of improvements may be allowed, *McMahon v. Cooper*, 70 Idaho 139, 212 P2d 657 (1949) ; no consequential damages after discovery of the fraud, *Massey v. Tyra*, 217 Ark 970, 234 SW2d 759 (1950). On the other hand, if the case is based upon the theory of the affirmance of the contract these items of cost cannot be considered in computing plaintiffs' measure of recovery.

Even if it is assumed that the case is to be considered as though the action were based upon an affirmance of the contract, the jury should have been instructed that from the amount awarded to the plaintiffs there must be deducted the unpaid part of the purchase price. *Hines v. Brode*, 168 Calif 507, 143 P 729 (1914) ; cf. *Townsend v. Jahr*, 147 Minn 30, 179 NW 486 (1920).

The defendants made no exception to the instruction on the measure of damages. Ordinarily the failure to do so would conclude the matter. However, in view of the evidence indicating plaintiffs' disaffirmance of the contract the imposition upon the defendants of a verdict which was arrived at upon a basis having no relation to plaintiffs' loss would be unjust. Therefore, I think that we should invoke Rule 50 of this court and

remand the case for a new trial. *Sorensen v. Gardner*, 215 Or 255, 334 P2d 471 (1959).

Since the plaintiffs have, by contract, exonerated defendant Ruschka from further liability they can now proceed only against the defendants Walker and Celoria. In any further proceedings against such defendants the $900 received from Ruschka must be deducted in showing the amount of their loss.

If, as I have assumed, the plaintiffs have elected to disaffirm the contract, their election does not preclude them from recovery against the defendants Walker and Celoria. Although there are cases to the contrary, *Van Looyengoed v. Allencrest Gardens Corp.*, 265 Mich 182, 251 NW 317 (1933); *Huffman v. Bankers' Automobile Ins. Co.*, 112 Neb 277, 200 NW 994 (1924); *Reilly v. Hopkins*, 133 Wash 421, 234 P 13 (1925); *Hager v. Scott*, 125 Wash 635, 216 P 840 (1923); 1941 Report of New York Law Revision Commission 291, Adequacy of Rescission Action in Failing to Permit Damages; including a dictum in our own reports, *Robinson v. Cable*, 109 Or 579, 217 P 624 (1923), the better view is that the election to disaffirm a transaction does not preclude the plaintiff from proceeding in an action for deceit against a third person who fraudulently induced the plaintiff to enter into the transaction. *Hansen v. California Bank*, 17 Cal App2d 80, 61 P2d 794 (1936); *Kuechle v. Springer*, 145 Ill App 127 (1908); *Nash v. Minnesota Title Insurance & Trust Co.*, 163 Mass 574, 40 NE 1039 (1895); *Ballard v. Lyon*, 114 Minn 264, 131 NW 320 (1911); *Mack v. Latta*, 178 NY 525, 71 NE 97, 67 LRA 126 (1904); *African Metals Corporation v. Barnes*, 262 App Div 698, 30 NYS2d 949 (1941), reversed in part, *African Metals Corporation v. Bullowa*, 288 NY 78, 41 NE2d 466 (1942), reargument denied 288 NY 673, 43 NE2d 75; *Kaufman v. Jaffee*, 244 App

Div 344, 279 NYS 392 (1935), noted 34 Mich L Rev 575 (1936); *Schelske v. Smith*, 55 S D 502, 226 NW 734 (1929); *Goldrei, Foucard & Son v. Sinclair* (1918) 1 K B 180; Williston on Contracts, § 1528. Admittedly the plaintiffs were entitled to proceed against Walker and Celoria in an action for deceit if the contract had been affirmed. Their remedy against these defendants should not be barred merely because they chose to disaffirm the contract. I adopt the view in *Moran v. Tucker*, 40 R I 485, 101 A 327, LRA 1918A 99 (1917) where the court said:

"* * * In many cases where the contract is only partially executed it would be unjust to hold, because of the theory on which the action of deceit is said to be based, that the party defrauded shall lose the advantage which in our practice attaches to a tort action, unless he makes further venture in the transaction into which he has been induced by fraud to enter."

To the same effect see *Paolini v. Sulprizio*, 201 Calif 683, 258 P 380 (1927); *Weckert v. Wentworth & Irwin*, 129 Or 342, 277 P 815 (1929).

The election of remedies should not be treated as a game of chance casting upon the plaintiff the risk of pecuniary loss if he happens to make a particular move. His election to disaffirm the contract should not preclude him from bringing an action for deceit against a third person unless the circumstances have so changed that it would be unjust to permit him to do so. Cf. Restatement of Restitution 144, §§ 64, 68; 36 Harv L Rev 593, 596, n 20 (1923).

The cause of action against defendant Ruschka is distinct from the cause of action against defendants Walker and Celoria. *Goldrie, Foucard & Son v. Sinclair*, supra; 2 Restatement, Agency 755, 760, §§ 343

(d), 348. The covenant not to sue executed in favor of the defendant Ruschka did not release the other defendants from liability for their separate tortious conduct. *Hicklin v. Anders*, 201 Or 128, 253 P2d 897, 269 P2d 521 (1954). However, as pointed out above, the sum of $900 paid to the plaintiffs by defendant Ruschka must be deducted from any judgment against the other defendants. *Hicklin v. Anders*, supra; *Murray v. Helfrich*, 146 Or 602, 30 P2d 1053 (1934).

The judgment should be reversed and the cause remanded to the circuit court with instructions to set aside the judgment and sustain the defendants' demurrer to the complaint and to entertain such further proceedings as would not be inconsistent with this opinion.

The rationale of the majority opinion seems to be that the plaintiffs are barred because they have elected the wrong remedy. The reasoning appears to be as follows. The rescission of a contract constitutes an election on the part of the vendee precluding the recovery of damages for deceit. The plaintiffs in the present case have demonstrated by their conduct that they have elected to rescind. Therefore, they are not entitled to damages; they are entitled to restitution only. But, it is said, they have not sought restitution in their complaint but have sought damages. Since they have sought a remedy which is not available to them they are barred from any relief.

The opinion states that the pleadings "do not support an action for rescission." In the context in which the statement is made it leaves the inference that one may ask for restitution only if there is a rescission. This of course is not true. If one rescinds a contract his remedy is restitution, but it does not follow that the remedy of restitution is limited to rescission cases.

The matter is treated clearly in 5 Corbin on Contracts, § 1223, pages 920 et seq. In speaking of the alternative remedies of restitution and damages Corbin states:

"* * * There is no inconsistency in giving both remedies if the transaction is so clearly severable for remedial purposes that there is no danger of double reparation.

"It is indeed often stated that the two remedies are inconsistent because the rendering of a judgment for damages is the enforcement of a contract, while a judgment for restitution is a remedy that is based upon a rescission of the contract. This distinction is inaccurate and misleading. It may render some service in indicating that the remedy of restitution is available only in cases of total breach of contract. It is inaccurate, because it is not true that the remedy in damages is more justly to be regarded as the enforcement of a contract than is the remedy by restitution. Both remedies are alike in that neither one gives to the injured party the performance that was promised him; in nearly all cases, both alike give him merely a judgment for a money payment in satisfaction of his wrong. Both are money remedies for a wrongful breach of contract. They differ merely in the method of measuring the amount to be awarded.

"In cases where a judgment for restitution is given as a remedy for breach, there is, in fact, no rescission of the contract by agreement of the two parties; nor is it necessary, as a preliminary requisite to a judgment for restitution, that the court shall decree that the contract is rescinded. In most cases where a decree of rescission has been entered, it amounts to no more than a declaratory judgment stating the legal relations existing between the parties before it was entered. As such, it causes those legal relations to be res judicata; but a judgment for restitution does this exactly as well, while at the same time affording a judicial remedy that includes a writ of execution."

Assuming that the election of remedies and the alleged error in pleading the wrong theory have the consequences attributable to them by the majority of the court, nevertheless, the plaintiffs would not be barred in the present case. It is assumed by the majority that the complaint "will not support an action for rescission." I do not think that this assertion can be substantiated. The complaint merely states that:

> "By reason of the fraud and deceit practiced upon the plaintiffs by the defendants as aforesaid, plaintiffs have been damaged in the sum of $6,000."

And the prayer for relief simply asks for $6,000 as compensatory damages and $6,000 as punitive damages. The complaint does not reveal that the theory of plaintiffs' case was rescission or affirmance of the contract. If the election of remedies doctrine is to be applied to the plaintiff his election must be found in his conduct and not in his pleadings. To say that the plaintiffs have elected their remedy under these circumstances would be to introduce into the doctrine of election of remedies a new idea. Heretofore the election which is regarded as binding the plainitff is found in the choice of remedies which he has made in the institution of his suit. The majority opinion finds the election in the conduct of the parties.

The decision is subject to criticism on a more serious ground, however. It would carry the doctrine of election of remedies to an absurd conclusion. Properly applied, the doctrine estops a person from pursuing a remedy inconsistent with one already selected. This would limit the application of the doctrine to cases where all of the elements of estoppel are present including a detrimental change in position by the estoppel asserter. In some cases it has been held that the mere bringing of an action for one available remedy

constitutes a bar to another action for an alternative remedy even though the defendant in no way changed his position. Such a result cannot be defended. But the present case goes even further and holds that where plaintiff *does not have the remedy sought in his complaint* he is barred from pursuing the remedy which was available to him. This is clearly an illogical and unjust conclusion. The case should be remanded for a new trial.

McALLISTER, C. J., special concurring.

I concur in the result as to the appealing defendants, J. J. Walker and John P. Celoria.