Argued February 14, reversed March 7, 1916.

## McGOWAN v. WILLAMETTE VALLEY IRR. LAND CO.

### (155 Pac. 705.)

**Vendor and Purchaser—Misrepresentation—Rescission.**

1. One purchasing land containing an orchard under an agreement that it was planted with a certain variety of trees may rescind if it was actually planted with a different variety, notwithstanding there was no difference in the value of the trees.

**Vendor and Purchaser—Contracts—Rescission—Evidence.**

2. In a suit to rescind a contract for the purchase of land containing an orchard on the ground that it was not planted with the variety of trees represented, evidence *held* to warrant judgment for complainant.

**Vendor and Purchaser—Contracts—Rescission—Motive.**

3. The purchaser of land containing an orchard may rescind where the trees were not of the variety represented, and his motive, though it be to relieve himself of a bad bargain, is no defense.

**Vendor and Purchaser—Contracts—Rescission.**

4. Where the purchaser of an orchard, who had been admitted into possession, rescinded because the trees were not of the variety represented, the parties should be placed as nearly as possible in their former condition, the purchaser being entitled to reimbursement for any permanent improvements made and a return of payments; the use of the land offsetting any right to interest on payments.

**Vendor and Purchaser—Action to Rescind—Costs.**

5. Where a vendor made misrepresentations without actual intent to deceive, the purchaser, although entitled to rescind because the misrepresentations amounted to legal fraud, is not entitled to costs.

[Liability of vendor for false representations innocently made, see note in Ann. Cas. 1913C, 63.]

From Marion: William Galloway, Judge.

Department 1.   Statement by Mr. Justice Burnett.

This is a suit by H. S. McGowan and Lida D. Mc-Gowan against the Willamette Valley Irrigated Land Company, a corporation.

The admitted facts in this case are that the plaintiffs, husband and wife, contracted to buy from the defendant and the latter agreed to sell to them a tract of about 30 acres of land in Marion County, near West Stayton, upon which they paid $3,000, May 13, 1913, and $84 as interest thereon a year later.   The written contract is admitted by both parties.   When the agreement was made the land had been set to young apple trees.   The plaintiffs assert that for the purpose of getting them to stipulate as they did, and knowing it to be untrue, the defendant by its agents represented to them that the tract was set to three varieties of apples, 60 per cent Rome Beauties, 20 per cent Ganos, and 20 per cent Thompkins Kings, being the varieties most desired by the plaintiffs, when in fact the trees were of equal proportions of Spitzenbergs and Jonathans, the latter of which the plaintiffs contend were not adapted to the soil in that vicinity, and would not be so valuable as those which had been represented to them.   For the sake of condensation we will designate as Rome Beauties what plaintiffs say were represented to them, and as Spitzenbergs what were actually on the ground.   We will also refer to the plaintiffs either in the singular or as McGowan, meaning the husband, because he transacted all the business on their part.

This matter is denied by the answer and, in turn, the defendant contends that it had two parcels of land equivalent in character, one of which was set to Rome

Beauties, and the other to Spitzenbergs; that the plaintiffs examined both tracts, were fully informed of the varieties of trees planted on each and had the option of taking either, and knowing all this selected the one mentioned in the written stipulation.

This in turn was traversed by the reply. From a decree for the defendant the plaintiffs appeal.

REVERSED.

For appellants there was a brief over the names of *Mr. Ernest R. Ringo* and *Mr. Alfred Todd,* with an oral argument by *Mr. Ringo.*

For respondent there was a brief with oral arguments by *Mr. Robert Tucker* and *Mr. John A. Carson.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. This being a suit to rescind on the ground that the plaintiffs did not obtain that for which they contracted, the relative values of the two kinds of orchards are of no moment. If the plaintiffs had chosen to bring an action for damages instead of rescinding the agreement, and it could have been shown that an orchard of Spitzenbergs was worth as much or more than one of Rome Beauties, the defendant would necessarily prevail. It is a platitude of law to say that when a person contracts to purchase a certain thing, he is entitled to that specified article. In a suit to rescind, therefore, it does not lie in the mouth of the defendant to say to the plaintiffs:

"True enough, you did not obtain that for which you sought, yet we have given you something just as good and you have no right to rescind": *Pennington* v. *Roberge,* 122 Minn. 295 (142 N. W. 710); *Mather* v. *Barnes* (C. C.), 146 Fed. 1000.

2, 3. The pivotal question in this case, therefore, is one of fact requiring an analysis of the testimony. It seems that the husband was a merchant at Springfield and wished to buy a prune orchard. Accordingly, having seen the advertisement of the defendant offering one for sale, he went to West Stayton to buy it. After inspecting it he went with the local agent to the principal office of the company in Portland and found it had been sold that very day. Some of the attachés of the office then directed his attention to other land at West Stayton which had been set to apple trees. Thus far all agree. He says that Mr. Hartog, the principal manager of the defendant, told him at Portland and afterward at Springfield, where he went to adjust some details of the transaction, that the tract was set to Rome Beauties, and that nothing whatever was said about Spitzenbergs. The plaintiffs went into possession of the land after the agreement had been executed, and some time in May, 1914, discovered that it was not planted to Rome Beauties as they desired, of which fact they immediately complained to the defendant. Under date of May 26, 1914, Mr. Hartog wrote to the plaintiff a letter reading thus:

"Answering your letter of May 25th, we can only say that we are surprised at your allegation that the orchard was not planted as represented. We went to considerable expense in handling this deal, and it was with the greatest of care. Every 5 acres was set with 60 per cent Rome Beauties, 20 per cent King of Thompkins Co., and 20 per cent Gano, as told you at the time. This was done carefully and in good faith, no matter what experts might say now, so there is nothing to adjust except the payment, and as written you, they are forcing me to foreclose. It will be to your interest to see me at once. You have been notified by the bank twice and since then by me twice, and unless you give this matter your immediate attention you will have

yourself to blame if the people from whom you bought the place force foreclosure proceedings.''

About this communication it is proper to say that after Hartog had examined the records of the defendant he discovered that he was mistaken, and so wrote to the plaintiffs, claiming that he had written hastily and without proper examination of the office files. On the other hand, it will be noted that the letter asserts that the land was set with Rome Beauties, Ganos and Thompkins Kings, ''as told you at the time.'' This quoted phrase did not depend upon the records of the company. It is a direct admission of the former oral declaration which the plaintiffs impute to the defendant. Its sole foundation was the actual conversation of the parties and tends strongly to corroborate the statement of the plaintiff. The latter testifies that after this letter had been written he went with his attorney to interview the manager, who even then still maintained that the land was planted to Rome Beauties. Hartog practically admits this by saying that he told the plaintiff at that time that he thought they were planted to Rome Beauties. The resident agent at West Stayton, who showed the land to the plaintiff, was a man named Hammer. The witnesses Dunlap and Korf, the latter, however, a son-in-law of the plaintiff, declare on oath that on May 5, 1912, when the plaintiff returned from Portland to examine the apple orchard, Hammer told him several times during the day they were going over the land that it was planted to Rome Beauties. On this subject Hammer says that before he went to Portland with McGowan he told him that the land was planted to Rome Beauties, but not afterward. He claims that he always thought they were thus planted until he went to Portland, where he says he learned from Mr. Camp, then a salesman

for the defendant, that the trees were Spitzenbergs. Camp testifies, in substance, that when McGowan came to Portland to buy the prune orchard and found that it had been sold, he (Camp) began to talk to him about apple orchards, and, taking him to the large map hanging on the wall of the company's office, representing its real estate, showed him the tract he afterward bought, and explained to him that it was planted to Spitzenbergs to meet the desires of a party to whom it had formerly been bargained, but who had given up the contract. Hammer says he heard this conversation and for the first time learned the truth about the trees on that parcel. He further says that when they returned and examined it, if he said anything at all, he told McGowan they were Spitzenbergs and Jonathans. Other witnesses testified that after the plaintiffs had gone into possession of the land Hammer stated on different occasions that he always thought the trees were Rome Beauties, and one witness attributed to him the positive statement as late as April or May, 1914, that they were of that variety. McGowan flatly contradicts Camp. Hartog says that the variety of tree was not discussed at Springfield, and disputes the witness Korf on that point. As before stated, he explains the letter quoted above by saying in substance that his mind was engrossed with many other transactions in the company's business, and that he wrote it hastily without examining his records. In our judgment the preponderance of the evidence is in favor of the contention of the plaintiffs on the feature of the representation concerning the varieties of apples set on the land. It is true that the plaintiffs were in default in their payments when they first disclosed to the defendant that the trees were not of the sort desired. While this ought to be considered as coloring their testimony,

indicating equivocally, at least, a desire to get out of a bad bargain, yet if it were a fact that the species of trees were misrepresented to them, they have a right to rescind the contract, having acted promptly on the discovery of the truth in that matter. Whatever may be their ulterior motive in escaping from what had probably proved an unprofitable venture, it cannot affect their equitable right to rescind on the ground of the misrepresentation. All parties connected with the affair, except Camp, evidently thought the trees planted were as claimed by the plaintiff. Camp is directly contradicted by McGowan. The weight of Hammer's testimony is considerably lessened by the apparent attitude he occupied, according to his own statement, while they were examining the land. It has a semblance at least of keeping silent and letting McGowan believe the impression he derived from Hammer's former statement.

Thus far the result is that the plaintiffs are entitled to rescind the contract and to a return of the money they have paid.

4. The parties should be restored as nearly as may be to their former situation. The plaintiffs have had the use of the land, and this should offset any demand of theirs for interest on the payments they have made. They should be credited with anything they have done for permanent improvement of the tract for the purpose to which it has been devoted. In this instance it would include only the reasonable expenses of pruning the orchard, together with leveling the land and digging irrigation ditches. The plaintiffs are entitled to the annual crops upon the land during the time they occupied it, as such emblements go with the use of the realty. In this way they have received the benefit of the cultivation they gave the land. They are entitled

to a cancellation of the contract, and should have a lien upon the land for the money they have paid, as thus stated:

| | |
|---|---:|
| First payment of | $3,000.00 |
| Payment of interest | 84.00 |
| Pruning trees | 15.00 |
| Leveling land | 10.00 |
| Ditching | 10.00 |
| | $3,119.00 |

Upon repayment to the plaintiffs of the money so allowed to them, they should be required to quitclaim to the defendant all interest they have in the land and to vacate the same, or, in default of making such reconveyance, the decree should stand instead thereof.

5. Under the circumstances of this case, while it is shown that there is legal fraud in the matter because of the misrepresentations about the varieties of trees, yet it is wanting in the actual deceit of one purposely intending to overreach another; consequently neither party will be allowed to recover costs or disbursements from the other.   The decree of the Circuit Court is reversed and one here entered according to the principles thus laid down.                         Reversed.

Mr. Chief Justice Moore, Mr. Justice McBride and Mr. Justice Benson concur.