Argued June 2, reversed and remanded June 17, 1970

FARNSWORTH et ux, *Appellants, v.*
FELLER et ux, *Respondents.*
471 P2d 792

58

*Sam F. Speerstra,* Salem, argued the cause for appellants. With him on the briefs were David A. Rhoten and Rhoten, Rhoten & Speerstra, Salem.

*Otto R. Skopil, Jr.,* Salem, argued the cause for respondents. With him on the brief were Williams, Skopil, Miller & Beck, and Lawrence N. Brown and Brown & Burt, Salem.

Before O'CONNELL, Chief Justice, and McALLISTER, SLOAN, HOLMAN and TONGUE, Justices.

TONGUE, J.

This is a suit to rescind a contract for the sale of a sand and gravel business in Salem for the sum of $412,500.

Plaintiffs appeal from an adverse decree, contending: (1) that defendants misrepresented, by means of a false appraisal report, that the property involved had, and had been appraised as having, a fair market value of $450,000, when in fact no such appraisal had been made and the actual value of the property was only $295,000, and (2) that defendants represented that all of a 29 acre tract of land near the Willamette River could be used for digging sand and gravel deposits on such property, when in fact some ten acres could not be so used for the reason that it had been zoned for residential use.

Defendants deny that the value of $450,000, as stated in the appraisal report shown to plaintiffs, was false and contend that, in any event, it was no more than an expression of opinion as to value. Defendants also contend that ignorance of zoning ordinances is not a sufficient basis for rescission and that, in any event, the earnest money contract included an express pro-

vision to the effect that the property involved was to be conveyed free and clear of all encumbrances except zoning ordinances, among other exceptions. Finally, defendants contend that plaintiffs did not rely on any representation by defendants, but solely upon their own investigations, and that the final written contract of sale includes a provision to that effect.

Upon examination of the record we find that a false and forged appraisal report was delivered by defendants to plaintiffs. Defendants made no effort to controvert testimony offered by plaintiffs to the effect that the purported signature of the appraiser upon the "certificate of value" of $450,000 in the report was a forgery and that although a previous and bona fide appraisal report on the property had been prepared and was in plaintiffs' possession, that report certified the value of the property to be $295,000, based upon a valuation of the 29 acre tract (one of three tracts involved) as residential property, at the much lower value of $87,000; that the page of the original report which showed that ten of the 29 acres had been zoned for residential use was not included in the report delivered by defendants to plaintiffs and that this fact was not discovered by plaintiffs until several weeks after the closing of the transaction.

Defendants contend that the appraisal report was to be used solely for the descriptions of the various tracts of land as set forth in the report. We do not so read the record.

■ It may be true, as also contended by defendants, that the two appraisal reports could be "reconciled" if the entire 29 acre tract were valued for use as a sand and gravel operation, but under the zoning ordinances ten acres of that tract could not be so used. It may also

be true that the ten acres zoned as residential was actually worth more than $87,000 if used for residential purposes, and that the actual total value of what was to be conveyed was worth the price paid for it. On the other hand, plaintiffs, as the purchasers of a sand and gravel business, were primarily interested in an adequate supply of sand and gravel and were not required to accept ten acres of property which could not be used for such purposes.[1]

We also conclude from the record in this case that the false appraisal report was relied upon by plaintiffs. The record is clear that it was examined by plaintiffs "extensively" before they made their first written offer to purchase the business. It also appears that a copy of the appraisal report was delivered by defendants to the bank and was relied upon by it, as well as by plaintiffs, in financing the purchase of the property and, implicitly, in the various notes, mortgages and other security documents under which plaintiffs assumed considerable indebtedness in connection with their purchase of the property.

■ It is true, as defendants contend, that the mere expression of an opinion by the seller of property with reference to its value is not sufficient as the basis for rescission of a contract for the sale of such property. *Ward v. Jenson*, 87 Or 314, 170 P 538 (1918). It is far different, however, for a seller to make a representation to a prospective purchaser with reference to the

---

[1] Similarly, it may also be true, as urged by defendant, that there may have been ample supplies of gravel in a gravel bar in the bed of the Willamette River. It does not follow, however, that plaintiffs were not entitled to rely upon the representation that these ten acres of property were available for sand and gravel operations, particularly in view of the representation that the 29 acre tract, including this ten acres, was worth $242,000 and that its "highest and best use was the exploitation of the high quality sand and gravel deposits on that tract."

value of property not simply as an expression of opinion, but as an assertion of fact, based upon a false appraisal report by which it is represented that the property had been appraised by a qualified appraiser as having such a value, when such was not the fact. Such a false representation, when relied upon by the buyer, as in this case, is sufficient ground for the rescission of the contract. As held by this court in *Horner v. Wagy*, 173 Or 441, at 457, 146 P2d 92 at 98, (1944):

> "An expression of opinion may be so blended with statements of fact as to become itself a statement of fact."

See also 1 Black, Cancellation and Rescission (2d ed) 181 and 45, §§ 70 and 22.

■ We also find upon examination of the record that defendants not only concealed the fact that the ten acre tract had been zoned for residential use, but that by representing that the "highest and best use" of this tract was for "exploitation" of its sand and gravel deposits, defendants misled plaintiffs into believing that the tract could be used for sand and gravel operations, when such was not the fact. It is well established in Oregon that concealment of a material fact, when combined with a "half-truth" or other misleading statement, is ground for the rescission of a contract of sale. *Heise v. Pilot Rock Lumber Co.*, 222 Or 78, 90, 352 P2d 1072 (1960).

■ It is true, as contended by defendant, that ignorance of the law is ordinarily not a proper basis for rescission and that negligence by the purchaser of real property may be a defense in a suit for rescission. On the other hand, in *Palmiter v. Hackett*, 95 Or 12, 18, 185 P 1105 (1920), this court expressly rejected the

contention that the presumption that every man knows
the law is applicable to zoning ordinances. Moreover,
as in that case, the matter of the zoning ordinances had
been called to the attention of the defendants in this
case, at least by the original appraisal report, so that
the parties did not have equal knowledge. As a result,
as held in *Palmiter*, such information was "manifestly
concealed with the purpose of inducing the trade" in
this case, by deleting the pages from the appraisal re-
port revealing that ten of the 29 acres had been zoned
residential and by representing, on the contrary, that
"the highest and best use" of the entire 29 acre tract
was the "exploitation of the high quality sand and
gravel deposits", which were valued at $242,000.[2] As
held in *Palmiter* (at pp 18-19) such conduct "consti-
tutes a fraud in law sufficient to vitiate the transac-
tion."

8. While it may be that a more diligent purchaser
would have investigated the applicable zoning ordin-
ances, any such negligence would provide no defense
in this case, under the rule previously adopted by this
court. Thus, in *Johnson v. Cofer*, 204 Or 142, 281 P2d
981 (1955), this court held, at p 150:

"* * * one who has intentionally deceived the

---

[2] Defendants point out that before the final contract was
signed plaintiffs knew that defendants were not the record owners
of this entire ten acre tract, but that it would be necessary for
defendants to record previously unrecorded deeds and to other-
wise acquire a portion of that tract in order to complete the sale.
Since, however, defendants represented that the entire ten acres,
which they undertook to convey to plaintiffs, could be used for
sand and gravel operations, when this was not true, it is im-
material that plaintiffs knew that defendants were not the record
owners of the entire ten acre tract.

Similarly, the fact that after the purchase and before learning
of the zoning problem plaintiffs allocated a substantial portion of
the purchase price to property later found to be zoned residential
is also immaterial, to answer another contention made by de-
fendants.

other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him or was guilty of negligence in so doing."

■ As for the exception in the earnest money agreement, in small print, relating to zoning, it should suffice to point out that no such exception appears either in the final contract of sale or in the deeds to the property involved.

■ On the matter of reliance, with reference to the question of zoning, it is true that Mr. Farnsworth had been a realtor; that plaintiffs examined the property themselves and also with an accountant and an out-of-town acquaintance in the sand and gravel business. On the other hand, plaintiffs had no prior experience in the sand and gravel business and defendants not only pointed out to plaintiffs the specific areas where defendants had started to dig for sand and gravel on the tracts zoned as "residential" but recommended that plaintiffs continue digging at those locations.

■ Shortly after plaintiffs undertook to do so, in reliance upon defendants' recommendation, they were notified by the authorities that the property was zoned for residential use and to cease and desist from such operations. The mere fact that plaintiffs did not then seek aid from defendants in making an application for a zone change is no defense, as urged by defendants, particularly in view of the fact that there was no evidence that such an application would have been granted.[9]

---

[9] Defendants point out that plaintiffs were in possession of the property for four weeks before the final contract was signed and that they did not immediately demand a rescission upon notice to cease digging gravel on the ten acre tract. It was not

 Furthermore, as previously indicated, reliance upon the false appraisal report was demonstrated by submitting it to the bank and by its use in arrangements for financing. As for defendants' contention that the "real reasons" for rescission was plaintiffs' loss of $35,000 in operations for the first months, there was no proof of that suggestion. In any event, the fact that one who has been defrauded may also have some other reason to desire the rescission of a transaction is not a defense in a suit for rescission if all of the required elements have been established, as in this case.

Thus, as held in *McGowan v. Willamette Valley Irr. Land Co.*, 79 Or 454, 460, 155 P 705 (1916):

> "Whatever may be their ulterior motive in escaping from what had probably proved an unprofitable venture, it cannot affect their equitable right to rescind on the ground of the misrepresentation."

 Finally, with reference to the contract provision reciting that plaintiffs relied solely upon their own in-

---

for several weeks thereafter, however, that plaintiffs first learned that defendants had another appraisal report, with a page showing that the tract had been zoned for residential use and that this page had been omitted from the appraisal report, as delivered to plaintiffs. Upon learning that fact plaintiffs took prompt steps to rescind the contract.

Defendants also say that Mr. Farnsworth previously admitted that he would not take this "disputed property" even "if the zone were changed to industrial." All the record shows, however, is the following:

> "Q. Didn't you tell me you wouldn't buy it even if it were zoned industrial, that you didn't want it?"
> "A. This was after we found out about the appraisal."

In our view, this so-called "admission" did not bar plaintiff from rescinding the contract upon learning that he had been defrauded by the use of a "phony" appraisal report, not only because portions relating to zoning had been deleted, but also because of the forged "certificate of value" by a qualified appraiser.

vestigation and not upon any representations by defendants, it has been expressly held by this court that such a contract provision provides no defense when, as in this case, the contract containing such a provision is voidable and itself subject to rescission. *Rice v. Levinger*, 141 Or 413, 416, 18 P2d 221 (1933); *Carty v. McMenamin*, 108 Or 489, 498, 216 P 228 (1923), 174 ALR 1010, 1045.

For all of the foregoing reasons we hold that plaintiffs were entitled to rescind the contract of sale and that this case must be remanded for further proceedings, including an accounting between the parties.[4]

Reversed and remanded.

---

[4] Defendants complain of difficulties in restoring the "status quo." When, however, a purchaser is entitled to rescission for misrepresentations made to him by the seller, as in this case, the existence of such "difficulties" will not ordinarily bar the granting of rescission, but is a matter for consideration by the trial court in working out the terms under which the property is to be exchanged for the return of payments made on the purchase price.