Argued June 4, reversed with instructions July 22, 1970

SOUZA ET UX, *Appellants, v.* JACKSON COUNTY
FEDERAL SAVINGS AND LOAN ASSOCIA-
TION, *Respondent.*

472 P2d 272

*Walter D. Nunley*, Medford, argued the cause and filed the briefs for appellants.

*G. W. Kellington*, Medford, argued the cause for respondent. With him on the brief were Harbison, Kellington & Kellington, Medford.

Before O'Connell, Chief Justice, and McAllister, Sloan, Denecke, Holman and Howell, Justices.

HOWELL, J.

Plaintiffs brought this suit to rescind the purchase of a house and approximately six acres of land. The trial court entered a decree for the defendant and plaintiffs appeal.

Plaintiffs alleged in their complaint that the defendant falsely represented that the domestic water system on the property was a three gallon per minute drilled well, that the defendant had installed a 1,000 gallon water storage tank, that the domestic water supply was ample to satisfy the needs of plaintiffs' family and that the property was worth $24,500.

The trial court found that the only representation established by plaintiffs was that the domestic water supply was a three gallon per minute drilled well. The court also found that the well was providing three gallons per minute on August 7, 1967 (prior to plaintiffs' purchase of the property) and relied on the presumption stated in ORS 41.360 (32) that: "A thing once proved to exist continues as long as is usual with things of that nature." On this basis the court found that plaintiff had failed to prove the representation was false.

Plaintiffs assign as error the failure of the court to find that the representation that the domestic water supply was ample to satisfy the needs of plaintiffs' family was false and that the court erred in finding the well was producing three gallons per minute on October 13, 1967, the date of the purchase.

The defendant listed the property for sale on October 5, 1967 with Ryan and Wells, a realty firm which was a member of the Medford Multiple Listing Service Inc. on a form supplied by the multiple listing service. A notation on the form stated that the listing "supersedes present listing with MLS."

In August 1967 the plaintiffs moved to Medford from California. After renting for a time they looked for a house to purchase and contacted a broker who apparently also belonged to the Medford Multiple Listing Service. The broker, after checking with Ryan and Wells, showed the property in dispute to plaintiffs and pointed out the well and storage tank. The next day the broker went to defendant's office and was advised that the well was 300 feet deep, the static water level was 60 feet, and that the well produced three gallons per minute. He relayed this information to plaintiffs. According to plaintiffs, who had no knowledge of wells, the broker also told them that three gallons per minute was a more than adequate water supply for their family. The plaintiffs also testified that the broker told them that the former owner had had financial difficulties and the place had been repossessed. The broker, together with the listing agent and the plaintiffs, went to defendant's office where an earnest money receipt was signed and the property purchased for $24,500 on October 13, 1967. Later plaintiffs received a deed and executed a mortgage to defendant for $14,500.

The plaintiffs took possession of the property on October 31, 1967. The next day they ran out of water. An employee of a pump company made two service calls, found the storage tank was dry and primed the pump. Within a week the water supply decreased to the extent that plaintiffs were forced to haul drinking water in jugs and could not use the bathroom facilities.

The plaintiffs had the well tested on December 9, 1967 and the well was able to produce only 17 gallons of water in two hours. When the plaintiffs complained to the defendant's president, he suggested that they hook up to a neighbor's water supply and that he would loan them an extra $1,500 to do so. The plaintiffs refused because of the extra cost, and, according to plaintiff Mr. Souza, the defendant's president told them: "You got a terrific buy on that house, had that house had water you couldn't have touched it for thirty thousand dollars."

The plaintiffs moved back to California in February 1968.

The former owner and builder of the house testified that he had drilled the well originally to 150 feet, received five gallons per minute or less and within three months the well went completely dry. He deepened the well, replaced the pump at least once, but did not have adequate water to supply the domestic needs in the house: "* * * When we took a bath we put two or three inches of water in the bathtub and took a bath." He had to haul water and he stated that hauling water regularly would cost $50 per month for a tank truck, so he advised the defendant's president of the water problem and that he could not afford the hauling expense. Eventually he executed a deed in lieu of foreclosure to defendant and moved off the property in February 1967.

While the property was vacant and in August 1967 the defendant sent a well driller and a pump man to work on the well. The record is not clear as to the extent the well was deepened. The pump was removed and replaced by another. Later the new pump had to be raised because it was in mud at the bottom of the well. The well was tested and produced three gallons per minute but the test was conducted for only "about an hour."

The trial court found that the only representation made to plaintiffs was that the well produced three gallons per minute. It is not necessary to decide whether the evidence supported plaintiffs' allegation in their complaint that the water supply was ample to satisfy the domestic needs of plaintiffs' family because proof of one material misrepresentation is sufficient. *Zeleny v. Karnosh*, 224 Or 419, 356 P2d 426 (1960). However, it would seem that a representation as to the production of a well for domestic use would naturally include the assurance that the production would be sufficient for such use.

■ The trial court found that the representation that the well produced three gallons per minute was innocently made. However, the rule is firmly established that a material misrepresentation although innocently made may be grounds for rescission. *Karn v. Pidcock*, 225 Or 406, 357 P2d 509 (1960); *Brown v. Hassenstab*, 212 Or 246, 319 P2d 929 (1957); *Sharkey v. Burlingame Co.*, 131 Or 185, 282 P 546 (1929).

■ In view of the past history of the well which was so bad that the preceding owner did not have sufficient water for household needs and relinquished his ownership to the defendant, and that the test was conducted only for about an hour, the defendant should not have

represented to plaintiffs in October 1967 that the well produced three gallons per minute.

■ In this case the trial court should not have applied the presumption that "a thing once proved to exist continues as long as is usual with things of that nature" to find that the production of three gallons per minute from this well in August 1967 continued to exist until plaintiffs signed the earnest money receipt on October 13, 1967. If it is to be applied at all, the presumption would be that a well which had a past history of going completely dry or producing insufficient water for the barest of household needs would continue to be equally insufficient.

The cause is reversed with instructions to enter a decree granting rescission.