Argued June 9, affirmed September 30, petition for rehearing
denied November 9, 1976

# WILKINSON et ux, *Respondents,*
## *v.*
# CARPENTER et al, *Appellants.*

554 P2d 512

*Mark McCulloch,* of Powers & McCulloch, Portland, argued the cause and filed briefs for appellants.

*Warren C. Deras,* Portland, argued the cause and filed a brief for respondents.

HOWELL, J.

## HOWELL, J.

Plaintiffs filed this suit seeking specific performance of a contract to sell to defendants a restaurant and lounge in northeast Portland known as "Dad's." Defendants filed a counterclaim seeking rescission on the grounds of fraudulent misrepresentation. The trial court entered a decree allowing specific performance, and defendants appeal.

In October, 1973, plaintiffs and defendants entered into a contract wherein plaintiffs agreed to sell "Dad's" to defendants for a total purchase price of $425,000, payable in installments. As part of the contract defendants also executed a note for $40,000 and another for $15,000.[1] Both the sellers and buyers are business individuals with extensive background and experience in the restaurant, tavern and lounge business. Both sides were represented by counsel in the sale of the premises. The contract contained a clause which stated that the property was sold "as is" and that there had been no warranties or representations made which induced the purchasers to buy the property.[2]

In seeking rescission of the contract, defendants alleged that plaintiffs induced them to enter into the contract by making the following misrepresentations:

"Plaintiffs had recently installed a complete air conditioning and heating system for the premises and these systems were in good operating order.

"Plaintiffs had recently constructed an entirely new

---

[1] Plaintiffs filed a separate law action to recover on the two notes. That action was tried before the court without a jury and judgment entered for plaintiffs. The defendants have also appealed from that judgment, but defendants agree that the decision in the equity suit for specific performance will control the appeal in the law action.

[2]

"7. *Warranties.* It is understood and agreed that all the properties sold hereunder are sold 'as is' and that there have been no warranties expressed or implied as to the condition of the properties or representations made with reference to the business known as 'Dad's' or real property which have induced the purchasers to purchase either of the properties described in paragraph 1, hereinabove."

roof on the premises and the new roof was in good condition and provided adequate protection against rain and snow."

We have read the three volumes of transcript and have examined the exhibits. However, it would be of no assistance to the bar to delineate all of the conflicting evidence on both sides. Many of the witnesses presented were the parties or were employees or former employees of the parties. Since their testimony is often in conflict, the credibility of the witnesses becomes an important factor. Although we review the evidence de novo, in such cases we give substantial weight to the findings of the trial judge. *See e.g., Adamson v. Adamson,* 273 Or 382, 541 P2d 460 (1975).

In his letter opinion advising counsel that he was finding for plaintiffs, the trial court stated that defendants' evidence did not persuade him "that any *fraudulent* misrepresentations were made to them by the plaintiffs." (Emphasis ours.) A similar statement appears in the "Conclusions of Law" adopted by the court. Defendants argue—and we agree—that normally it would not be necessary for them to prove that the inducing misrepresentations were made fraudulently in order to entitle them to rescind. *See, e.g., Souza v. Jackson Co. Fed. S. & L.,* 256 Or 220, 472 P2d 272 (1970). However, in this case the contract contained a clause specifically excluding any prior warranties and declaring that there had not been any representations made which induced defendants to purchase the property. Although such a clause will not preclude relief upon a showing of *actual* fraud, *see, e.g., Farnsworth v. Feller,* 256 Or 56, 471 P2d 792 (1970), it does prevent defendants from relying upon any innocent misrepresentations as the basis for a suit for rescission.

The distinction is based upon public policy. No one can be allowed to profit from intentional misstatements of material facts. However, in the absence of

some countervailing policy, the parties to a contract should be allowed to allocate the actual risks of the venture as they see fit. *See, e.g.,* 12 Williston on Contracts 467, § 1511 (3d ed 1970):

> "* * * Liability for innocent misrepresentation may be excluded by the express terms of the contract; but if the contract attempts to provide against liability for misrepresentation of any kind, it will be restricted, on grounds of public policy, to honest misrepresentation."

*See also* 3 Corbin on Contracts 402-03, 411, § 578 (rev ed 1960):

> "If a written document, mutually assented to, declares in express terms that it contains the entire agreement of the parties, and that there are no antecedent or extrinsic representations, warranties, or collateral provisions that are not intended to be discharged and nullified, this declaration is conclusive as long as it has itself not been set aside by a court on grounds of fraud or mistake, or on some ground that is sufficient for setting aside other contracts.
>
> "* * * * *.
>
> "A provision that there are no previous understandings or agreements not contained in the writing is, on its face, a statement of fact; but it is more than such a statement. By limiting the contract to the provisions that are in writing, the parties are definitely expressing an intention to nullify antecedent understandings or agreements. They are making the document a complete integration. *Therefore, even if there had in fact been an antecedent warranty or other provision, it is discharged by the written agreement. To establish fraud, it is not sufficient merely to show that the writing states that there was no antecedent agreement when the fact is that there had been one.* If, by artifice or concealment, one party induces the other to suppose that the antecedent agreement is included in the writing, or to forget that agreement and to execute an incomplete writing, while describing it as complete, the written provision may be voidable on the ground of fraud." (Emphasis added; footnotes omitted.)

There is a statement contained in one of the older editions of McCormick on Evidence which seems to

indicate that a "disclaimer" or "merger" clause, such as this one, protects the seller from liability for damages alone and does not prevent the buyer from suing for rescission on the basis of a prior innocent misrepresentation. Thus, McCormick states that:

> "* * * *When the representations are innocently made,* or when the principal is innocent of complicity in the conscious misstatements of the agent, the better view seems to be that a 'no representations' clause will protect the principal against liability for damages in deceit for loss of the value of the bargain. *The other party, however, is entitled to defend against liability on the contract so induced, and to be restored to his former position by rescission and restitution.* * * *" (Emphasis added; footnotes omitted.) McCormick, The Law of Evidence 453, § 222 (1954).

However, no reason for this distinction is given, and the authorities cited in the footnotes support only the agency aspects of the statement made in the text. Moreover, the statement made seems plainly inconsistent with the view taken by other authorities on the same subject. *See* 1 H. Black, Rescission of Contracts and Cancellation of Written Instruments 198, § 74 (2d ed 1929):

> "* * * But there is also a formidable body of authority to the effect that a party to a contract cannot shield himself from the effect of his false representations in inducing the contract by stipulating therein that he shall not be liable for such misrepresentations, *such a stipulation being available only for innocent mistakes;* and that a provision of the contract that 'there are no representations or warranties except as may be written on the face hereof' is itself invalid as against any actual false representations which induced the contract. * * *" (Emphasis added; footnote omitted.)

In D. Dobbs, The Law of Remedies 644, § 9.5 (1973), a similar statement is made:

> "* * * [T]he usual view is that such clauses, being a part of the contract that was induced by fraud, are no more valid than the contract itself. *Such exculpatory clauses are, of course, perfectly appropriate when used to*

*protect the innocent. \* \* \**" (Emphasis added; footnote omitted.)

*See also* IX Wigmore on Evidence 125, § 2439 (3d ed 1940):

"*\* \* \** In other words, in an action of *deceit,* or in a proceeding of *rescission of contract* wherever this by the law depends upon the promisor's conscious falsity, the present rule interposes no obstacle; although in an action of contract upon an alleged warranty as a part of it, *or in a proceeding of rescission for breach of warranty or innocent misrepresentation, the same representations could not be considered.*" (Latter emphasis ours; footnote omitted.)

These authorities are further supported by the analysis made in *Arnold v. National Aniline & Chemical Co.,* 20 F2d 364, 370 (2d Cir 1927):

"*\* \* \** When the vendor says it does not warrant, it merely means that it asserts nothing to be true for which it will be responsible in these ways. *The writing constitutes the agreement of the parties, and the vendee has no rights under it other than those given by its terms.* It may have been induced to go into it by antecedent statements which have turned out to be incorrect, *but if the promisor has agreed to nothing not covered by the instrument the vendee can have no remedy under the contract merely because some prior representations were wrong.* If, however, it can prove that the vendor has knowingly deceived it, that the deceit was an inducement to the contract, and that it relied upon it to its damage, the situation is quite different." (Emphasis added.)

■ In short, the weight of authority recognizes no distinction between actions for damages and suits for rescission based upon innocent misrepresentations which have been specifically disclaimed in the contract of sale. Nor have we been able to discern any persuasive reason why such a distinction should be made. Both causes should be precluded by such a disclaimer unless actual fraud can be established. If actual fraud can be established, neither remedy should be precluded.

The previous decision of this court in *Sharkey v.*

*Burlingame Co.,* 131 Or 185, 282 P 546 (1929), is not to the contrary, and *Sharkey* cites both the *Arnold* case and § 2439 of Wigmore, supra, with apparent approval. Rescission was allowed in *Sharkey* on the basis of the defendant's agent's fraudulent representations which induced plaintiff to enter into the contract. In considering the effect of the disclaimer clause in that case, this court analyzed previous cases involving purported disclaimers of *fraudulent* representations and reached the following conclusion:

> "* * * We think that the effect of this stipulation was to attempt to relieve the defendant from liability for the misrepresentation of its agents inducing plaintiff to enter into the contracts and that such a stipulation is unenforceable because against public policy, that the fraud complained of vitiates the entire transaction and that the introduction of parol testimony of the fraudulent representations was admissible * * *." 131 Or at 206.

Defendants' brief characterizes *Sharkey* as "holding that a disclaimer clause does not bar evidence of misrepresentations innocently made * * *." In support of that conclusion, defendants quote the following passage from that opinion:

> " '* * * We think that the rule deducible from the authorities we have cited is that misrepresentations innocently made, where the party retains the fruits of a bargain induced by such representations, are sufficient to maintain a suit for rescission.' " [Citing 3 Williston on Contracts, § 1500, and authorities there cited.] 131 Or at 207.

However, defendants' reliance on this language is misplaced. The quoted statement does not discuss the effect of a disclaimer clause, but merely restates the general rule that innocent misrepresentations are ordinarily a sufficient basis for a suit for rescission. The authority cited is to the same effect. What the *Sharkey* case actually decided was that a contract with an innocent principal could be rescinded on the basis of the fraudulent representations of his agent despite a disclaimer clause because "the fraud complained of

vitiates the entire transaction," including the disclaimer clause. The issue presented was no broader than that, and the conclusion which was reached in that case is entirely consistent with our present decision. Unlike *Sharkey,* this case does not involve any fraudulent misrepresentations, and there is no basis in this case for refusing to give effect to the disclaimer clause on those grounds.

■ Nor have defendants demonstrated any other basis for avoiding the consequences of their disclaimer. Defendants were represented by counsel at the time they entered into the contract. Under the terms of the agreement, they waived reliance upon any previous representations or warranties. There is no claim that they did not understand the effect of this language or that any representations upon which they had relied were omitted from the written contract by mutual mistake. Therefore, in the absence of a showing of actual fraud, they cannot avoid the effect of their disclaimer, and they are not entitled to rescission.

Affirmed.

**TONGUE, J.,** dissenting.

The majority holds that although a so-called "merger clause" (that no representations have been made other than as stated in the contract) will not protect a seller who has made a *fraudulent* misrepresentation to a purchaser, such a contract clause will provide protection to a seller who has made a nonfraudulent misrepresentation.

This may be true under existing law in an action for damages, but not in a suit or countersuit for rescission of a contract including such a clause, as involved in this case. The basic distinction, as overlooked by the majority, is that in an action for damages the plaintiff is suing on the contract as a whole, which he must affirm, while in a suit for rescission the plaintiff is denying the validity of the contract, including the merger clause.

One of the primary authorities cited by the majority is 12 Williston on Contracts 467, § 1511 (3d ed 1970). In considering that citation, however, it is important to note the context in which the statement relied upon by the majority is made. Thus, the first sentence in § 1511 is as follows (at 465):

> "The precise limits of *liability in damages* for honest misrepresentation are not fixed at the same place by all of the courts which hold that such liability may exist. * * *" (Emphasis added)

After some discussion of *this* subject, § 1511 of Williston, *supra,* then states (at 467), as quoted by the majority:

> "The above discussion of limitation of *liability* by operation of law for honest misrepresentation is to be contrasted with limitation of such liability by contractual provision. *Liability* for innocent misrepresentation may be excluded by the express terms of the contract; but if the contract attempts to provide against liability, for misrepresentation of any kind, it will be restricted, on grounds of public policy, to honest misrepresentation." (Emphasis added)

Thus, it is clear that the statement relied upon by the majority is one limited to the question of *liability* for *damages* for honest misrepresentation in a case involving a contract with such a clause, rather than the question whether such a contract may still be *rescinded* for such an honest misrepresentation.

The second authority cited by the majority in support of its position is 3 Corbin on Contracts § 578 (rev ed 1960). That authority, however, does not support the majority, but states (at 402-03) that:

> "If a written document, mutually assented to, declares in express terms that it contains the entire agreement of the parties, and that there are no antecedent or extrinsic representations, warranties, or collateral provisions that are not intended to be discharged and nullified, this declaration is conclusive *as long as it has itself not been set aside by a court on grounds of fraud or mistake, or on some ground that is*

*sufficient for setting aside other contracts. \* \* \*"* (Emphasis added)

This is also made clear by Corbin, *supra* [406 n.43], stating that:

> "Not only is proof of fraud, *mistake,* or duress admissible to show that the contract is voidable (including the clause to the effect that there are no extrinsic terms, representations, or conditions), but also to eliminate that exclusionary clause itself and to permit proof of collateral provisions and representations. \* \* \*" (Emphasis added)

Of equal significance is the fact that the majority, in quoting from Dobbs on Remedies 644, § 9.5 (Hornbook Series 1973), omits the sentence immediately following the statement quoted by it, and which states that:

> "\* \* \* The principal who honestly disclaims having made representations to a buyer who deals with an agent, should not be liable in damages, *though even here rescission may be permitted.* \* \* \*." (Emphasis added)

The majority recognizes that the following rule is also stated in McCormick on Evidence 453, § 222 (Hornbook Series 1954):

> "\* \* \* When the representations are innocently made, or when the principal is innocent of complicity in the conscious misstatements of the agent, the better view seems to be that a "no representations" clause will protect the principal against *liability for damages* in deceit for loss of the value of the bargain. *The other party,* however, *is entitled* to defend against liability on the contract so induced, and *to be restored to his former position by rescission and restitution.* \* \* \*" (Emphasis added)

The majority characterizes that statement as taken from "one of the older editions." That statement was made in McCormick on Evidence 453, § 222 (Hornbook Series 1954). The second edition of McCormick (1972) does not state a different rule, but omits all discussion of the entire subject of the parol evidence rule and related problems, such as the effect of "no representation" clauses upon the admissibility of such evidence.

[ 321 ]

Such a rule is also consistent with the general rule, as stated in Calamari & Perillo, Law of Contracts 86, § 42 (Hornbook Series 1970), that:

"\* \* \* [N]or does the parol evidence rule prevent proof that the written contract lacks consideration, or that it is voidable or subject to reformation by reason of mistake, or vitiated by fraud, duress or undue influence, or that it is invalidated by illegality. *In general it may be said that parol evidence is always admissible to show that the agreement is void or voidable.*" (Emphasis added)

It is also significant to note that the 1927 case of *Arnold v. National Aniline & Chemical Co.,* 20 F2d 364 (2d Cir 1927), the only court decision quoted by the majority in support of the rule adopted by it, involved a counterclaim for damages for breach of warranty and fraud, rather than a countersuit for rescission of the contract, as in this case.

The previously existing law in Oregon, as I view it, is in accord with the rules as stated in Corbin and McCormick, *supra.* It is well established that mis-representation need not be fraudulent to provide sufficient grounds for the rescission of a contract, but that honest misrepresentations are sufficient for that purpose, although not sufficient to impose "liability for damages." *See Souza v. Jackson Co. Fed. S. & L.,* 256 Or 220, 224, 472 P2d 272 (1970), and cases cited therein.

The majority states that the decision of this court in *Sharkey v. Burlingame Co.,* 131 Or 185, 282 P 546 (1929), is "not \* \* \* contrary," to the rule stated by it and in *Sharkey* this court allowed rescission "on the basis of the defendant's agent's fraudulent misrepre-sentations." Be that as it may, this court in *Sharkey,* after discussing at some length (at 203-07) the effect of so-called "merger clauses," concluded with a statement of the following rule (at 207):

"\* \* \* We think that the rule deducible from the authorities we have cited is *that misrepresentations innocently made, where the party retains the fruits of a*

*bargain induced by such representations, are sufficient to maintain a suit for rescission,* * * *."[1] (Emphasis added)

This rule, as stated in *Sharkey,* as well as in Corbin and McCormick, *supra,* is also consistent with the more recent holding of the court in *Farnsworth v. Feller,* 256 Or 56, 471 P2d 792 (1970). Although that was a suit to rescind a contract with a "merger clause" for a false and fraudulent representation, the basis for decision (as stated at 65-66) was not that the representation was fraudulent, but was as follows:

"Finally, with reference to the contract provision reciting that plaintiffs relied solely upon their own investigation and not upon any representations by defendants, it has been expressly held by this court that such a contract provision provides no defense *when,* as in this case, *the contract containing such a provision is voidable and itself subject to rescission.* [Citing cases]"[2] (Emphasis added)

---

[1] 3 Willison on Contracts § 1500 (1920), as cited in *Sharkey v. Burlingame Co.,* 131 Or 185, 207, 282 P 546 (1929), states the following rule, supported by the citation of many cases:

"It is not necessary in order that a contract may be rescinded for fraud or misrepresentation that the party making the misrepresentation should have known that it was false. Innocent misrepresentation is sufficient. For though the representation may have been made innocently, it would be unjust to allow one who has made false representations even innocently, to retain the fruits of a bargain induced by such representations.* * *"

Restatement of Agency 2d § 260 (1958), although not directly in point, states the rule that:

"(1) An innocent principal can, by contract with another, relieve himself of *liability for deceit* because of unauthorized fraud by a servant or other agent upon the other party.

"(2) A contract with, or conveyance to, the principal obtained by his agent through misrepresentations *can be rescinded* by the other party to the contract or conveyance prior to a change of position by the principal, even though the contract provides that 'it shall not be affected by misrepresentations not contained therein' and includes a statement that the agent has made no representations." (Emphasis added)

[2] This rule is also consistent with our previous holding in *Johns-Manville Corp. v. Heckart et al,* 129 Or 505, 277 P 821 (1929), involving a counterclaim for damages for breach of oral warranties in a sale made under a contract with a similar clause to the effect that there were "no

The rule is also consistent with the modern trend by the courts, including this court, to protect purchasers against misrepresentations, whether fraudulent or "innocent," at least to the extent of requiring repayment of the purchase price by one who would otherwise "retain the fruits of a bargain induced by such misrepresentations," rather than to apply the old rule of *caveat emptor* in such cases.

Under the new rule of law as adopted by the majority in this case, sellers of real property, by the single expedient of inserting in earnest money agreements and other land sales contracts the provision approved by the majority, may completely protect themselves from the rescission of contracts induced by misrepresentations of their agents unless the purchaser is able to sustain the heavy burden of proof that such representations were made fraudulently. Thus, by the simple addition of such a "boiler plate" provision in the "fine print" of a form contract, a purchaser to whom a real estate agent has made a negligent or "mistaken" representation regarding such important facts as the boundaries, acreage, or zoning restrictions, now has no remedy by rescission of such a transaction despite the fact that at the time of the transaction he relied upon the misrepresentation and had no reason to know that it was not true, and thus no reason to question the inclusion of such clause in the contract. This new rule not only represents an important change in the law of Oregon relating to rescission of contracts, but a rule which, in my best judgment, is a "backward step" at a time when, as recognized by most other courts, purchasers of both real and personal property are in need of more, rather than less, protection.

For these reasons, I most respectfully dissent.

---

promises" not expressed in the contract. This court held that evidence of such oral warranties was admissible even though the oral warranties were not claimed to have been made fraudulently. The court held (at 510) that "the whole evidence" showed that the statement in the contract clause "was not true."