Argued July 20, affirmed as modified October 1,
reconsideration denied November 15, petition
for review denied December 11, 1979 (288 Or 173)

## WILLIAMS,
*Respondent-Cross-Appellant,*
*v.*
## COLLINS, et al,
*Appellants-Cross-Respondents.*
### (No. 77-5160, CA 12177)

600 P2d 1235

Gerald R. Pullen, Portland, argued the cause and submitted the brief for appellants-cross-respondents.

Michael Doyle, Eugene, argued the cause for respondent-cross-appellant. With him on the brief were Bick & Monte, P. C., and Donald A. Bick, Eugene.

Before Schwab, Chief Judge, Lee, Gillette and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

This is a suit by the plaintiff purchaser to rescind a contract of sale and a promissory note. The contract of sale provided that the defendants Collins agreed to sell and the plaintiff agreed to purchase the Ada Resort on Siltcoos Lake near Florence, Oregon. The promissory note was given by the plaintiff to the defendant Vern L. Spiker dba Spiker Realty of Ventura, California, in payment of the real estate commission on the sale.[1]

The trial court granted rescission of the contract of sale and the promissory note. We affirm the rescission. The trial court gave the plaintiff a judgment against defendant Spiker for the sum of $200, representing the payment on the promissory note. We affirm that judgment. The trial court also awarded the plaintiff a judgment against the defendants Collins for the sum of $20,000, representing the plaintiff's down payment in the amount of $30,000 less reasonable rental in the amount of $10,000. On the plaintiff's cross appeal we modify that judgment and increase it to $23,600.

In November 1976, the defendants Collins, husband and wife, listed the Ada Resort on Siltcoos Lake for sale with the defendant Vern L. Spiker. Spiker had previously spent a week at the resort as a customer of the Collins and for that reason had some first hand knowledge of the property listed. The Ada Resort included lake frontage, a cabin, a store building, four houseboats, five smaller fishing boats, a dock, and a camping area.

---

[1] The contract of sale for the resort provided in part:

"It is understood and agreed that Spiker Realty has earned a commission for arranging the sale of the aforesaid real and personal property and business as herein described. It is agreed, however, that such commission shall be the obligation of the buyer herein, and not the seller, and the amount and terms of the payment of such commission shall be a matter of contract between buyer and said Spiker Realty. Seller shall have no further obligations to Spiker realty for its commissions, whatsoever."

In compliance with this provision, plaintiff executed and delivered to defendant Spiker his promissory note in the amount of $10,000 payable in monthly installments of $205.17 commencing July 1, 1977.

[483]

Plaintiff Williams had worked for Sears, Roebuck & Co. in the Los Angeles area for 19 years in the service and repair department. He retired from that company in November 1976 with total assets of between $30,000 and $40,000. Early in January 1977, the plaintiff drove north to seek his fortune. In Ventura, plaintiff contacted defendant Spiker. Spiker showed plaintiff the listing agreement on the Ada Resort. At this time the defendants Collins were visiting relatives in Bakersfield. A week or two later a meeting was arranged between the plaintiff and all the defendants at the Spiker real etate office. The listing agreement was again shown to and discussed with plaintiff.

An earnest money receipt for the sale and purchase of the Ada Resort was executed by plaintiff and the defendants Collins on February 1, 1977. The sale was subject to the buyer's on-site approval of the property. Plaintiff travelled to Oregon, where he met the defendants Collins and inspected the resort on the 12th, 13th and 14th of February.

On February 28, 1977, while in Spiker's office, plaintiff signed a contract to purchase the Ada Resort. The contract was prepared by defendant Spiker's attorney. The contract provided for a purchase price of $275,000 with a down payment of $30,000 cash. The unpaid balance was to draw interest at the rate of 8-1/2% per annum and was to be paid in accelerating monthly installments starting with the sum of $1,500 including interest.[2]

On March 16, 1977, plaintiff and his adult son arrived at the Ada Resort. They spent the next several weeks making various repairs and improvements to the property. The resort was opened to the public for business on June 1, 1977.

---

[2] Plaintiff asserted that he did not realize until questioned by the trial judge that the $1,500 monthly installments would not pay the accrued interest in full.

By July 1977, plaintiff had become disenchanted with his purchase of the Ada Resort. On that date his attorneys sent to the defendants Collins a notice of rescission with a demand for the return of plaintiff's down payment in the amount of $30,000. Plaintiff delivered possession of the resort to the defendants Collins at noon on July 31, 1977. Defendants Collins then took over operation of the resort. Thereafter, plaintiff filed this suit for rescission.

After a six day trial, the court found that the parties had rescinded the contract for the sale of the resort on Siltcoos Lake by their conduct.[3]

Defendants raise four assignments of error: (1) defendants demur for the first time in this court to the plaintiff's cause of suit for rescission on the ground that it does not state facts sufficent to constitute a cause of suit, there being no allegation of fraud; (2) the trial court erred in decreeing the rescission of the contract of sale when it contained exculpatory language and plaintiff did not plead or prove fraud; (3) the court erred in deciding the case on a legal theory not pleaded; and (4) there was no substantial evidence of misrepresentations, mutual or unilateral mistake, and plaintiff did not act promptly after the discovery of any alleged misrepresentation or mistake.

We do not reach defendants' third assignment of error, that the trial court was wrong in deciding the case on a legal theory not pleaded, because on de novo review we decide the case on theory actually pleaded.

The defendants' first two assignments of error turn on whether or not plaintiff pleaded and proved fraud.

"Comprehensively stated, the elements of actionable fraud consist of: (1) a representation; (2) its

---

[3] The trial court in an opinion letter said:

"The court is convinced that the parties effected a rescission of their contract as a matter of law by virtue of their conduct and correspondence in relation to the property and its surrender back to the vendor prior to the commencement of the suit."

falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignoranceof its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury." *Conzelmann v. N.W.P. & D. Prod. Co.* 190 Or 332, 350, 225 P2d 757 (1950).

*See also Rice v. McAlister,* 268 Or 125, 128, 519 P2d 1263 (1974).

■ Plaintiff's complaint for recission contains a count based on innocent misrepresentation and a count based on mutual mistake. However, the count for mutual mistake contains the following allegation: "Defendants, if not themselves mistaken, *concealed* the fact that such facts existed." (Emphasis supplied.) Concealment when there is a duty to speak is fraudulent. *Heise et ux v. Pilot Rock Lbr. Co.,* 222 Or 78, 352 P2d 1072 (1960).

When plaintiff's complaint is matched against the elements of actionable fraud in *Conzelmann v. N.W.P. & D. Prod. Co., supra,* and *Rice v. McAlister, supra,* we find:

"Before Plaintiff agreed to purchase the resort, * * * [1]*the Defendants represented* to Plaintiff that the resort was a fully operational resort with *an annual profit of $30,000 * * *.*

[6] [7] "That *in reliance on the foregoing representations and believing them to be true* Plaintiff executed a contract * * * [3] [5] *The representations * * ** were given by Defendants *as a material inducement* to Plaintiff *to purchase the resort property* and Plaintiff would not have purchased said resort except for said representations.

[2] *"The foregoing representations were not true at the time they were made [9]* in that said resort did not have a $30,000 annual profit, * * *.

[4] "*Defendants,* if not themselves mistaken, *concealed the fact that such facts existed."* (Emphasis added.)

Plaintiff has specifically alleged all the elements of actionable fraud, except "(8) his right to rely thereon." *Conzelman v. N.W.P. & D. Prod. Co., supra.*

■ No motions or demurrers were filed against the plaintiff's complaint in the trial court. A complaint is liberally construed when a demurrer is filed for the first time on appeal. *Sherrod v. Holzshuh,* 274 Or 327, 546 P2d 470 (1976); *Keegan et al v. Lenzie,* 171 Or 194, 135 P2d 717 (1943).

■ In *Briscoe v. Pittman,* 268 Or 604, 609-10, 522 P2d 886 (1974), the court stated:

> "The defendants also contend that the complaint and the findings of fact are deficient because they do not allege the plaintiff's ignorance of the falsity of the statement concerning the amount of the acreage and the plaintiff's right to rely thereon, all as required by *Musgrave* and *Conzelmann.* The two above-cited cases list nine requirements to sustain fraud, but they unduly fractionalize the essential elements. As an illustration, it is unnecessary to allege or find the hearer's ignorance of the falsity of a statement if it is alleged and found that the hearer relied upon it, because ignorance of the falsity of the statement *is necessary* to reliance. Also, while an allegation or finding of reliance is an allegation or finding of fact, whether or not a person *has a right* to rely is a conclusion which the law draws from facts and is not an allegation or finding of fact."

We interpret the above language to mean that plaintiff is not required to specifically plead his right to rely. All he need plead is actual reliance.

■ We are of the opinion that plaintiff's complaint states a cause of suit for rescission based on fraud and therefore the defendants' demurrer set out in their first assignment of error is overruled.

Under our de novo review, we consider whether or not plaintiff has proved fraud which would entitle him to rescind.

Plaintiff's complaint and proof centers on the following portion of defendants' listing agreement of the resort with the defendant Spiker:

"May-June-July-Aug-Sept Income $6,000 mo., boats and rental, expense $500 mo., lic & taxes $1,000, price $275,000, 29% down, 3 years same owner."

This listing agreement was shown to plaintiff by the defendant Spiker at their first meeting. A week or two later it was again shown to plaintiff by all the defendants. At both meetings the contents of the listing agreement and the annual profit of the Ada Resort were discussed. Plaintiff testified that at the second meeting all the defendants agreed and represented that the resort had an annual profit of $30,000 and he understood it to be a net profit.

By interpreting the language of the listing agreement in a light most favorable to defendants, the Ada Resort was represented as having an annual gross profit of $30,000, with expenses in the sum of $3,500, leaving a net profit of $26,500.

Defendants Collins had operated the resort for three years. The following summaries of the income and expenses were received in evidence:

|  | 1975 | 1976 |
|---|---|---|
| Gross Income | $21,954.18 | $22,475.75 |
| Expenses | 10,384.44 | 10,143.04 |
| Net Income | $11,569.74 | $12,221.71 |

By deducting other items, including depreciation and interest paid on business debts, defendants Collins income tax returns for the same years showed a loss of $2,152 and a profit of $107, respectively.

Defendants claim that they explained to plaintiff that the income of $6,000 per month set out in the listing agreement was a "potential" income and that could be obtained if the four houseboats and five smaller boats were booked solid for the season. Defendants further claim that they explained that an early advertising campaign would be needed to max-

imize profits. Plaintiff denies that defendants told him that the $6,000 per month income was "potential" or "projected" income.

There is no reasonable or credible basis for defendants' assertion. In 1975, defendants Collins' gross income from all boats for the full season was $10,515.50. In 1976 the figure decreased to $9,924.50. Plaintiff, in early July 1977, expended the sum of $1,000 on television advertising with very little immediate results.

Defendants knew that plaintiff had used the major portion of his money in making the down payment and, therefore, would be required to net $18,000 per year from the operation of the Ada Resort to make the installment payments to defendants Collins.[4]

It appears to make little difference whether defendants' representations of the $30,000 annual income was gross or net. Both their actual net and gross incomes for the years 1975 and 1976 fell substantially below that figure.

■ We find that plaintiff is credible and has proved by clear and convincing evidence that defendants made to the plaintiff a false material representation as to the income of the Ada Resort. Defendants knew that the representation of income was false and concealed the true facts from plaintiff. Defendants intended that the representation should induce plaintiff to purchase the resort. Plaintiff did not know that the representation was false and relied upon its truth to his injury.

■ From the fact that the books and records of the Ada Resort were within the control of defendants Collins[5]

---

[4] In addition to the $18,000 plaintiff would need to generate an additional sum of approximately $2,800 per year to pay the accrued interest. Also plaintiff was required to pay the defendant Spiker the sum of $2,462.04 each year until the real estate commission in the amount of $10,000 was paid in full.

[5] On plaintiff's inspection trip to the Ada Resort in February 1977, defendant Joella Collins told plaintiff how to keep the books, but did not show him the actual records except for some receipts. At that time plaintiff requested to see the books, but defendant Richard Collins told him, "I wouldn't even show those to my own lawyer."

and the fact that the statement as to the income of $6,000 per month of the resort was given by defendants Collins to the real estate agent and later reaffirmed by the same defendants to the plaintiff, we conclude that plaintiff had a right to rely on said representation as to income. Once defendants undertook to speak they had an obligation to tell the whole truth. *Heise v. Pilot Rock Lbr. Co., supra; Dahl et al v. Crain et ux,* 193 207, 237 P2d 939 (1951); *Palmiter v. Hackett,* 95 Or 12, 185 P 185 P 1105, 186 P 581 (1920). A fraudulent misrepresentation is an intentional tort. Plaintiff was under no duty to investigate and his contributory negligence, if any, will not bar his recovery. Restatement (Second) of Torts §§ 540, 541A, and 545 A (1977). "[I]t is better to encourage negligence in the foolish than fraud in the deceitful." *Johnson et ux v. Cofer,* 204 Or 142, 151, 281 P2d 981 (1955). Defendants could not avoid the misrepresentation by saying that plaintiff should have found out the truth. *Investors Equity Exch. v. Whiteley,* 269 Or 309, 524 P2d 1211 (1974).

Plaintiff's complaint also alleged that defendants falsely represented that the resort was fully operational, that the personal property was in good working order, and that the inventory was sold at the lower of cost or market. We find that plaintiff has ample grounds for rescission without considering these additional allegations.

Defendants' second assignment of error is that the trial court committed error in decreeing rescission of the contract of sale when it contained the exculpatory language set out in margin.[6] The quoted clause will

___

[6] The contract of sale between plaintiff and defendants for the Ada Resort contained the following:

"Buyer acknowledges on site inspection of the said property and business and approves the same. The buyer has executed this agreement and is making the purchase of said real and personal property and business located thereon after his own investigation of the equipment and personal property included with this sale. No representations whatever of values or potential or past profits have been made or relied upon by buyer to induce his purchase of said real and personal property and business."

not preclude relief upon a showing of actual fraud. *Wilkinson v. Carpenter,* 276 Or 311, 554 P2d 512 (1976); *Farnsworth v. Feller,* 256 Or 56, 471 P2d 792 (1970).

In connection with the fourth assignment of error we have previously found that there was clear and convincing evidence of misrepresentations. We need not consider the question of evidence of mutual or unilateral mistake. We find that plaintiff did act promptly after the discovery of the fraudulent misrepresentation. The resort did not open for business until June 1, 1977. Plaintiff gave his notice of rescission on July 28, 1977. It was reasonable for plaintiff to keep the business open for that period of time in order to give it a fair trial to prove the income represented by defendants.

The cross appeal claims that "trial court erred in ordering restitution to the plaintiff of only $20,000 from defendants Collins. Such an order improperly allowed defendants a set off of approximately $13,600."

The trial court, after granting plaintiff rescission ordered the down payment in the amount of $30,000 to be paid back to plaintiff, less a reasonable rental value of the property in the amount of $10,000. It appears that the court neglected to give plaintiff credit for the two monthlly installments paid in the amount of $1,500 each. Further, plaintiff should receive $600, which he spent making capital improvements on the resort. Therefore, the decree will be modifed to award plaintiff a judgment against the defendants Collins in the sum of $23,600 instead of $20,000.

Affirmed as modified.